Rita ARISMENDIZ, Plaintiff,

v.

**UNIVERSITY OF TEXAS AT EL PASO, Defendant.**

No. EP–07–CV–00189–KC.

United States District Court, W.D. Texas, El Paso Division.

Feb. 4, 2008.

Lisa A. Elizondo, Elizondo & Hayes, P.C., El Paso, TX, for Plaintiff.

Erika M. Laremont, Attorney General of Texas, Austin, TX, for Defendant.

## *ORDER*

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendant's Motion for Summary Judgment.

For the reasons set forth herein, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

In 2002, Plaintiff began working in the Department of Languages and Linguistics at the University of Texas at El Paso ("UTEP"). Def.'s Proposed Undisputed Facts ¶ 1. During 2002, Plaintiff was issued a Procurement Card ("ProCard") to make business-related purchases for the Department of Languages and Linguistics. *Id.* ¶ 2. Plaintiff also received training in the use of the ProCard around this time. *Id.* ¶ 3. In 2002, Plaintiff received a handout entitled "Introduction to the Procurement Card Program." *Id.* ¶ 5. The document stated that there is a $1,000 per transaction limitation on ProCard purchases and a $2,000 per day limitation. *Id.* ¶¶ 6–7. Plaintiff was aware that improper use of the ProCard could lead to termination. *Id.* ¶ 8. From 2003 until 2006, Plaintiff received annual training regarding the use of the ProCard. *Id.* ¶ 4.

In November, 2005, Plaintiff's ProCard was audited. *Id.* ¶ 9. This audit led to an investigation by the UTEP Office of Auditing and Consulting Services. *Id.* ¶ 10. The investigation determined that Plaintiff knowingly violated UTEP policy and procedures regarding the ProCard, that Plaintiff exceeded the ProCard single transaction limit of $1,000 on five occasions, and that Plaintiff exceeded the ProCard daily limit of $2,000 on three occasions. *Id.* ¶¶ 11–13. In addition, the investigation found that Plaintiff failed to provide adequate support documentation for $22,127.86 of ProCard purchases from January 2005 to February 2006, and that Plaintiff purchased printer cartridges from questionable vendors at a higher price than comparable products. *Id.* ¶¶ 14–15, 17. The investigation also found that Plaintiff accepted gifts from vendors, that Plaintiff purchased an inordinate amount of cartridges without demonstrating the need, and that Plaintiff failed to provide original receipts for purchases. *Id.* ¶¶ 16, 18–19.

On September 7, 2006, the Office of Auditing and Consulting Services issued a report of its findings to the President of the University, the Vice President for Institutional Advancement, the President for Business Affairs, the Dean of the College of Liberal Arts, the Chair of the Department of Languages & Linguistics, and the Assistant Director of Human Resources. *Id.* ¶ 20. After this report, Plaintiff was placed on paid administrative leave from UTEP. *Id.* ¶ 21. Dr. Kirsten Nigro ("Nigro"), Plaintiff's supervisor, recommended Plaintiff's termination on September 20, 2006. *Id.* ¶ 22. The reasons Nigro listed in the Pre–Disciplinary Hearing Notice Termination Letter were all related to the findings of the audit of Plaintiff's ProCard. *Id.* ¶ 23. According to Plaintiff, her termination became final on October 2, 2006. Pl.'s Resp. to Proposed Undisputed Facts 3.[1]

In January 2004, Plaintiff was awarded custody of her grandson. Def.'s Proposed Undisputed Facts ¶ 24.[2] At around this time, Plaintiff was granted leave pursuant to the Family Medical Leave Act ("FMLA") on an intermittent basis. *Id.* ¶¶ 25–26. According to Defendant, from

---

1. According to Defendant, Plaintiff's termination from UTEP became final on October 22, 2007. *Id.* ¶ 24. It appears from the record that Defendant has made a typographical error and that Plaintiff's time line is correct.

2. Defendant's Proposed Undisputed Facts erroneously contains two separate paragraphs numbered 24. Def.'s Mot. for Summ. J. Supp. App'x ("Proposed Undisputed Facts"). The Court has followed Defendant's numbering despite this mistake.

January 2004 until October 2006, Plaintiff exercised her rights under the FMLA. *Id.* ¶ 27. According to Plaintiff, she exercised those rights until she was placed on paid administrative leave, sometime in August or September 2006. Pl.'s Resp. to Proposed Undisputed Facts 3. Plaintiff was never denied leave under the FMLA. *Id.*

Plaintiff was among five employees identified as having failed to adhere to UTEP's policies and procedures for the ProCard by the Office of Financial Services. *Id.* Of these five employees, Plaintiff was the only one whose employment was terminated. *Id.* at 4. The ProCard policies provided for progressive sanctions, indicating that the third violation would result in confiscation of the card. *Id.* Plaintiff had received only one strike for misuse of the ProCard prior to her termination. *Id.* The Department of Languages and Linguistics did not maintain any policies and procedures for the acquisition of supplies. *Id.* According to Plaintiff, Nigro was unfamiliar with her obligations under the FMLA and met on at least two occasions with the Department of Human Resources ("HR") to learn about the requirements. *Id.* According to Plaintiff, Nigro felt that Plaintiff was struggling to be "proactive" in her use of FMLA leave. *Id.* According to Plaintiff, Nigro considered terminating Plaintiff before she received the results of the final ProCard audit. *Id.*

## II. ANALYSIS

### A. Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Ellison,* 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–47 (5th Cir.1996). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield,* 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice,* 369 F.3d 854, 860 (5th Cir.2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## B. FMLA Interference Claim

In its Motion, Defendant argues that Plaintiff cannot establish a prima facie case of FMLA interference because she was never denied FMLA benefits. Def.'s Mot. for Summ. J. 7. In her Response, Plaintiff fails to state how Defendant interfered with her FMLA rights or cite legal authority to support her position. She simply responds:

> Plaintiff/Non–Movant claims a genuine issue of material fact exists as to her claim of interference with her rights under the FMLA and submits discovery, documentary evidence, and UTEP's pleadings as summary judgment evidence, referenced in an appendix attached hereto, filed with this response and incorporated by such reference for all purposes as if recited herein.

Pl.'s Am. Resp. to Def.'s Mot. for Summ. J. 3.

Such is the extent of her response to this claim.[3]

 Unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994). The nonmovant is required to identify specific evidence in the record and to articulate the manner in which that evidence supports his or her claim. *Id.* The court is under no duty "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 n. 7 (5th Cir. 1992)). Plaintiff has failed to point to specific evidence in the record or to articulate how this evidence supports her claim. The Court is neither a mind reader nor Plain-

tiff's advocate. For these reasons, it cannot make Plaintiff's legal argument on her behalf. Because Plaintiff has failed to substantiate her assertion, and, in fact, has failed to even make an assertion, the Court grants Defendant's Motion for Summary Judgment as to the interference claim.

Still, if Plaintiff had intended to argue that her FMLA rights were interfered with because she was discouraged from seeking FMLA leave, her claim fails. The Family Medical Leave Act ("FMLA") provides eligible employees with a total of twelve weeks of leave in a one-year period related to qualifying circumstances, such as "the care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C) (2006). The FMLA interference provision makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any substantive FMLA right. 29 U.S.C. § 2615(a)(1); *see Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir.2004).

 The FMLA does not define "interference," but Department of Labor regulations provide that interference with the exercise of an employee's rights includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. 29 C.F.R. § 825.220(b); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir.2006); *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004). It prohibits employer activities that "deter employees' participation" in activities protected by the FMLA. *Stallings*, 447 F.3d at 1050; *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.

---

**3.** Plaintiff's counsel includes "evidence" with her Response but she fails to make a single legal argument, cite any authority to support the proposition that Defendant interfered with her client's rights, or to in any way connect the evidence with the interference claim.

2001). Generally, proof of injury under the FMLA requires evidence that the plaintiff was denied FMLA leave improperly. *De La Garza–Crooks v. AT&T*, 252 F.3d 436, 2001 WL 361099, *1 (5th Cir. 2001) (unpublished) (citing *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1274 (11th Cir.1999) ("[A] plaintiff suffers no FMLA injury when she receives all the leave she requests . . . .")).

In this case, Plaintiff unequivocally stated in her deposition testimony that Nigro's actions did not stop her from asking for time off.[4] She also states that she was never denied FMLA leave. Pl.'s Resp. to Proposed Undisputed Facts 3. Thus, even if Plaintiff were to argue that Defendant discouraged her from taking FMLA leave, the undisputed facts and the evidence show that Plaintiff was not actually deterred from asking for FMLA leave and that she received all the FMLA leave that she sought. Accordingly, the Court finds Defendant did not interfere with Plaintiff's FMLA rights and also grants its Motion as to Plaintiff's claims of FMLA interference on this alternative ground.

## C. FMLA Retaliation Claim

In its Motion, Defendant claims that Plaintiff cannot establish that Defendant's reasons for terminating her were pretextual because Plaintiff admitted to the violations that led to her termination. Def.'s Mot. for Summ. J. 9. Plaintiff's response to the retaliation claim is deficient. As with her response pertaining to the interference claim, this response also lacks legal argument, citation to authority, and a connec-

tion between the law and the evidence. However, Plaintiff does remark that certain UTEP employees, who violated ProCard policies, were treated more favorably than she was. Pl.'s Resp. to Mot. for Summ. J. 4. She also claims that Nigro contacted HR to inquire about termination procedures before she was in receipt of the audit of Plaintiff's ProCard and that Nigro chose to terminate Plaintiff contrary to a "three-strikes policy." *Id.* at 4–5

The Fifth Circuit applies the *McDonnell Douglas* framework to analyze FMLA retaliation claims that rely on circumstantial evidence. *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332 (5th Cir.2005); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001); *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir.1999) (internal citations omitted). To make a prima facie showing of retaliation under the FMLA, Plaintiff must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave. *Hunt*, 277 F.3d at 768. The burden of establishing the prima facie case is not an onerous one. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n. 6 (5th Cir.2003). If the plaintiff sets forth her prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action. *Hunt*,

---

**4.** At her deposition, Plaintiff stated:

A. Dr. Nigro made it very difficult for me to ask for my leave. Many times I was afraid to ask for it because she would give me a hard time. She would always roll her eyes, and she always questioned if it was necessary for me to be there, if there was anybody else that could take care of [my grandbody else that could take care of [my grand-

son], if there was anybody else that could handle him. It was just very difficult for me to ask for the time.

Q. Okay. But it didn't stop you from asking for the time off?

A. No, it didn't stop me from asking. Arismendiz Dep. 10:25–11:10, Sep. 24, 2007.

277 F.3d at 768. If the defendant can do so, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's reason is a pretext for retaliation. *Id.*

### 1. Prima facie case

 Plaintiff has established her prima facie case. The first two elements of the prima facie case, that Plaintiff was entitled to FMLA leave and that she suffered an adverse employment action are not in dispute in this case. The only issue is whether she was treated less favorably than an employee who had not taken FMLA leave or if she was terminated because of her taking FMLA leave. Plaintiff has submitted evidence that: 1) other employees who violated ProCard policies were not similarly terminated; 2) Nigro, her supervisor, inquired about termination procedures before receiving the results of the ProCard audit and; 3) Nigro terminated Plaintiff after only the first violation of UTEP policy despite a three-strikes, progressive discipline policy. Pl.'s Resp. 4–5. Because the burden to establish the prima facie case is not an onerous one, the Court finds that this evidence of purported disparate treatment, purported premeditated termination, and purported deviation from standard policy is sufficient to establish the prima facie case.

### 2. Legitimate, non-retaliatory reason for termination

 As Plaintiff has established a prima facie case of discrimination, Defendant must counter with a legitimate non-retaliatory reason for Plaintiff's termination. *See Hunt,* 277 F.3d at 768. Defendant avers that it terminated Plaintiff because she engaged in acts of misconduct by violating several UTEP policies. Def.'s Mot. for Summ. J. 9. Defendant notes that Plaintiff has admitted to those violations.

*Id.* On its face, this explanation is non-discriminatory, and the Fifth Circuit has held as much, that the violation of work rules is a legitimate, non-discriminatory reason for an adverse employment action. *See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995). Plaintiff must respond with evidence showing that Defendant's explanation was pretextual. *See Hunt,* 277 F.3d at 768.

### 3. Evidence of pretext

Plaintiff counters with three pieces of evidence that she argues demonstrate that Defendant's reason for her termination was pretextual. She states that other employees who violated ProCard policies were not similarly terminated, that Nigro, her supervisor, inquired about termination procedures before receiving the results of the ProCard audit, and that Nigro terminated Plaintiff after only the first violation of UTEP policy despite a three strikes, progressive discipline policy. Pl.'s Resp. 4–5. The Court will address each piece of these arguments in turn.

#### a. Disparate treatment

Plaintiff asserts that four other employees, who violated UTEP ProCard policies as Plaintiff had, were not similarly disciplined. She argues that this inconsistent treatment is evidence of pretext.

 In disparate treatment claims, the plaintiff must show that the employer "gave preferential treatment to [ ] [another] employee under nearly identical circumstances; that is, that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in by ... [other] employee[s]." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir.2001) (internal quotations and citations omitted). Plaintiff has not met her burden to show pretext because she has failed to demonstrate that the

other four employees were similarly situated to Plaintiff. Each of the five employees listed on the Procurement Card Report was employed by different departments and each answered to different supervisors. Def.'s Mot. for Summ. J. Ex. E. This fact complicates Plaintiff's requirement that she demonstrate that she was similarly situated to those individuals who were treated more favorably. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir.2000) (employees were not similarly situated where they held different jobs and "[m]ost importantly, the decision-makers who disciplined" the employees were different). Moreover, Plaintiff's evidence of the other UTEP employees, who violated ProCard policies, is merely a list of names and does not describe the disciplinary action taken against any of the individuals listed. The report merely identified employees who violated the policy. Thus, Plaintiff has failed to meet her burden of showing that she was similarly situated to these other employees who were not similarly disciplined.

In addition, Plaintiff committed additional infractions beyond the ProCard policy violations. An investigation revealed that she engaged in highly suspicious activity involving invoice discrepancies, transaction log inconsistencies, significant overpayment for printer cartridges, conducting business with questionable out-of-state vendors, building up a printer cartridge inventory of over 100 cartridges during a one-year period, and accepting gifts from these vendors. Def.'s Mot. for Summ. J. Ex. D. Plaintiff provides no evidence or explanation how her multiple violations of multiple policies were similar to the viola-

tions of the individuals who committed what were often technical violations of ProCard policy.[5] Establishing nearly identical circumstances requires that the misconduct charged among similarly situated employees be nearly identical. *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir.2004). That is simply not the case here and Plaintiff's claim of disparate treatment must fail.

### b. Nigro's inquiry with HR as evidence of retaliatory animus

Next, Plaintiff claims Nigro made the decision to terminate her employment prior to the receipt of the ProCard audit results. *See* Pl.'s Resp. 4. She states that this is evidence of pretext and that she was actually terminated in retaliation for her taking FMLA leave. *Id.*

Plaintiff's view of the deposition testimony mischaracterizes Nigro's testimony. Defendant points out that Nigro was informed of Plaintiff's ProCard violations on August 18, 2006, during a meeting with Lorenzo Canales, the audit investigator. Nigro Dep. 63:15–24, Oct. 9, 2007 (Def.'s Reply Ex. F). Defendant also shows that Nigro inquired into termination procedures only after she was informed of the results of the audit. *Id.* at 79:4–23. This testimony supports Defendant's assertion that Nigro asked about termination procedures only after receiving the audit report.

Plaintiff points to the following deposition testimony to support her argument:

Q. Is it fair to say that you were considering termination prior to the time that the final audit was completed?

---

**5.** The ProCard infractions of Plaintiff's alleged cohort group consist of: 1) allowing tax to be charged tax on permitted restaurant expenses when ProCard policy disallows tax charges; 2) exceeding the $1,000 limit on a single occasion and; 3) the use of the Pro-

Card to pay for one international cell phone call. Def.'s Mot. for Summ. J. Ex. D. Such infractions pale in comparison to Plaintiff's admitted ProCard and non-ProCard infractions involving tens of thousands of dollars and involving admitted personal gain.

A. Yes.

Q. To the point where you had visited with HR about what the process would be if you made the decision to terminate?

A. No. The decision to—when it started, really, was after the meeting at HR. I went to HR immediately just to find out what [sic] procedure would be if I did.

*Id.* at 83:2–12.

Plaintiff's own evidence supports Defendant's view of the facts. The evidence shows that Nigro had not decided to terminate Plaintiff prior to the completion of the final audit; rather, Nigro had only *considered* termination prior to the audit's completion. It is also clear that Nigro's visit to HR occurred after the completion of the audit. Because Plaintiff presents no evidence that Nigro had decided to terminate Plaintiff prior to the audit's completion, her claim must fail. Taken as a whole, this evidence is inconsistent with Plaintiff's claim that Nigro had decided to terminate Plaintiff prior to receiving the results of the ProCard audit.

### c. Failure to follow three-strikes policy

 Next Plaintiff states that Defendant's failure to follow its progressive disciplinary policy is evidence of pretext. Pl.'s Resp. 5. Defendant argues that Plaintiff's egregious ProCard violations were sufficient to warrant termination without exercising progressive disciplinary actions. Def.'s Reply 4–5.

An employer's disregard of policies "does not of itself conclusively establish that ... a nondiscriminatory explanation for an action is pretextual." *See Laxton v. Gap, Inc.,* 333 F.3d 572, 581 n. 3 (5th Cir.2003) (quoting *EEOC v. Tex. Instruments, Inc.,* 100 F.3d 1173, 1182 (5th Cir. 1996)). UTEP's progressive discipline policy provides, "Disciplinary measures available to supervisors, *in addition to demotion, suspension without pay, or dismissal,* include the following progressive steps from least severe to most severe...." Def.'s Reply Ex. D. (emphasis added). Even the ProCard Policy regarding discipline states, "[t]he Procurement Card *normally* operates on a three (3) strikes your [sic] out basis." *Id.* Ex. E (emphasis added).

Plaintiff has presented no evidence of a mandatory progressive disciplinary policy regarding ProCard violations or termination procedures. This should be no surprise, considering that based upon the policies quoted above, it appears that it is within the discretion of the supervisor to determine the level of discipline. In addition, Plaintiff has engaged in numerous violations of UTEP policy. Even if the policy were mandatory, she has committed more than her three strikes. Plaintiff has struck out.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. No. 10) is **GRANTED.**

The Clerk shall close the case.

**SO ORDERED.**