

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00148-CV

**ROGER WILLIS,**

Appellant

v.

**NUCOR CORPORATION,**

Appellee

From the 87th District Court
Leon County, Texas
Trial Court No. 0-05-519

## O P I N I O N

Roger Willis sued his former employer, Nucor Corporation, for retaliatory discharge for Willis's filing of a worker's compensation claim. *See* TEX. LAB. CODE ANN. § 451.001 (Vernon 2006). The trial court granted Nucor's motion for summary judgment, and Willis appeals. We will affirm.

### Standard of Review

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a summary judgment, we

must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See id.* at 756.

## Background

Willis was employed by Nucor for twenty-four years, working in the maintenance department of its Jewett steel mill. In September of 2004, he was injured while working, and a worker's compensation claim was filed for that injury. A few days later, Nucor terminated Willis's employment.

Nucor initially filed a no-evidence motion for summary judgment, and in response Willis filed summary-judgment evidence. The trial court denied the no-evidence motion. Nucor later filed a traditional motion for summary judgment on the "causal connection" element, and the trial court granted that motion.[1]

## Ruling on Objections to Summary-Judgment Evidence

Nucor filed objections to five affidavits and an "internet document" that Willis filed as summary-judgment evidence. The trial court did not issue a formal, written order ruling on Nucor's objections, but did make a docket-sheet entry stating that Nucor's objections were sustained. Willis asserts in his first issue that this summary-judgment evidence remains part of the summary-judgment record on appeal because the trial court did not issue a formal, written order sustaining Nucor's objections.

---

[1] Willis's fifth issue complains that the trial court impermissibly weighed the summary-judgment evidence. Because we conduct a de novo review, we need not address issue five. TEX. R. APP. P. 47.1.

Nucor replies that the trial court's docket-sheet entry satisfies the written-ruling requirement because it does not lead to speculation over the trial court's ruling.

We, along with numerous courts, have stated that docket-sheet entries do not suffice for "of-record" rulings on objections to summary-judgment evidence. *See Eads v. American Bank, N.A.,* 843 S.W.2d 208, 211 (Tex. App.—Waco 1992, no writ) (citing *Utilities Pipeline Co. v. American Petrofina Mktg.,* 760 S.W.2d 719, 723 (Tex. App.—Dallas 1988, no writ)); *accord In re K.M.B.,* 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We reaffirm that principle and again caution parties and advise trial courts on the importance of reducing summary-judgment objection rulings to formal, written orders of record. *See Allen v. Albin,* 97 S.W.3d 655, 663 (Tex. App.—2002, no pet.).

We have also held that we may infer an implicit ruling on objections to summary-judgment evidence, *but only from the record. See id.* at 662-63 (citing *Dolcefino v. Randolph,* 19 S.W.3d 906, 926 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("we cannot infer *from the record* in this case that the trial court implicitly overruled or implicitly sustained appellants' objections") (emphasis added)); *see also Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.,* 127 S.W.3d 235, 241 (Tex. App.—Waco 2003, no pet.) ("We cannot imply a ruling on Appellants' objections *from this record.*") (emphasis added). As noted above, the docket sheet is not part of the record, and we will not infer a ruling from a docket-sheet entry. We thus sustain in part Willis's first issue,[2] and we

---

[2] We therefore need not address Willis's second and third issues, which assert in the alternative that the trial court erred in sustaining Nucor's objections. TEX. R. APP. P. 47.1.

treat Nucor's objections as not having been ruled on by the trial court. In our discussion below on the summary-judgment evidence, we will address Nucor's objections and the evidence at issue.

**Causal Connection**

The elements of a section 451.001 retaliatory discharge cause of action are:

1.  An employee;
2.  is discharged or discriminated against in any manner;
3.  because the employee has filed a workers' compensation claim in good faith; and
4.  that "but for" the employee's filing of a workers' compensation claim, the discharge would not have occurred when it did.

*Alayon v. Delta Air Lines, Inc.*, 59 S.W.3d 283, 287 (Tex. App.—Waco 2001, pet. denied) (citing TEX. LAB. CODE ANN. § 451.001(1); *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); and *Jenkins v. Guardian Indus. Corp.,* 16 S.W.3d 431, 435 (Tex. App.—Waco 2000, pet. denied)).

> The last element is known as the "causal connection" or "causal link," and the employee has the burden to establish a causal link between the discharge and the filing of the workers' compensation claim. *Continental Coffee,* 937 S.W.2d at 450 (citing *Continental Coffee Prods. Co. v. Cazarez*, 903 S.W.2d 70, 77-78 (Tex. App.—Houston [14th Dist.] 1995)); *Garcia v. Allen*, 28 S.W.3d 587, 600 (Tex. App.—Corpus Christi 2000, pet. denied). This link may be established by direct or circumstantial evidence. *Garcia*, 28 S.W.3d at 600. Examples of circumstantial evidence sufficient to establish a causal link include: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Continental Coffee,* 937 S.W.2d at 451 (citing *Continental Coffee Prods. Co. v. Cazarez*, 903 S.W.2d 70, 77-78 (Tex. App.—Houston [14th Dist.] 1995)); *Jenkins,* 16 S.W.3d at 435-36. These five examples are not necessary elements of the cause of action. *Dallas Area Rapid Transit v. Johnson,* 50 S.W.3d 738, 2001 Tex. App. LEXIS

5023, *7 (Dallas 2001, no pet. h.). The workers' compensation claim also need not be the sole cause of the termination. *Jenkins,* 16 S.W.3d at 436.

> Once a link between filing the claim and the discharge is established, it is the employer's burden to rebut the alleged retaliation by showing there was a legitimate reason for the discharge. *Garcia,* 28 S.W.3d at 600; *Jenkins,* 16 S.W.3d at 436. Thereafter, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive. *Id.* The retaliatory motive may also be established by either direct or circumstantial evidence using the *Continental Coffee* examples. *Texas Division-Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 314 (Tex. 1994) (per curiam); *Jenkins,* 16 S.W.3d at 436. The employee's subjective beliefs are, however, no more than conclusions. *Texas Division-Tranter,* 876 S.W.2d at 314.

> Our initial inquiry is how to apply the shifting burdens in the summary judgment context. *Jenkins,* 16 S.W.3d at 441. In *Jenkins,* we decided that when the employer files its summary judgment motion, the employee has not been called on to produce evidence of the employer's motive. *Id.* Only after the employer's summary judgment evidence establishes a legitimate, non-discriminatory reason for the discharge is the employee required to come forward with summary judgment evidence of a retaliatory motive. *Id.* We follow the reasoning set forth in *Jenkins.*

*Id.* at 287-88.

Issue four asserts that the trial court erred in granting summary judgment because Willis raised a fact issue on the causal-connection element.

*Legitimate, non-discriminatory reason for discharge*

In this case, Nucor met its initial burden; its summary-judgment evidence established a legitimate, non-discriminatory reason for Willis's discharge. Willis had been injured on-the-job—a partial finger amputation—in January of 2004, and Nucor's April of 2004 "Record of Consultation" stated in part the following about that incident:

> All injuries are disappointing but this one is especially disappointing. On September 16, 2003, Roger was issued a letter of commendation for his performance in safety. The letter was issued to demonstrate our

confidence in what appeared to be [a] turn-around in Roger's regard for an accident free work place. As a leader, few things are more gratifying and exciting than to see a person drop old habits and perspectives and actively promote ones that are aligned with the division goals. Prior to this accident it appeared as though Roger was on board with the division goal of no accidents and challenging his peers to do the same. However, it appears that Roger struggles to recognize the risk associated with performing a task.

Since Roger started in 1982 he has had 22 accidents with varying degrees of severity, several of which have required medical attention[,] and this one is disfiguring. Roger has shown significant improvement the past three years in his safety performance and has been a positive influence on the new employees[,] but this accident broke his trend. Roger must constantly focus on the job at hand[,] and that is working safely. Reviewing Roger's history[,] it is apparent that he has difficulty recognizing potential unsafe conditions. Roger has been researching awareness training and is strongly encouraged to find and complete a course; we will help any way possible

Roger will be issued a 3-Day suspension for his failure to recognize a hazard that resulted in the amputation of his finger. *It must be very clear that any safety violations going forward may result in the termination of Roger's employment. It must also be made clear that any demonstration of reluctance to fully commit to an accident free work place and any demonstration of reluctance to fully accept responsibility for this accident may result in the termination of Roger's employment.* I fear that Roger's demonstrated tendency to narrowly focus on the immediate task at hand without recognition of all hazards will claim his life or the life a team member. I have a responsibility to Roger, his family, and the Nucor family that all employees have the training, tools, equipment, facility, and environment that insures each of us a safe return home provided we work safe. *Being safe is a condition of employment.* Life depends on it. [Emphases added.]

This record was jointly prepared and signed by Jason Coleman, Willis's supervisor, and John Farris, the department manager, and it was signed by Willis and Jim Darsey, the general manager. The record further indicates that the incident and subsequent action had been discussed with Willis. Willis testified in his deposition that he recognized that, going forward, further accidents could result in the loss of his job.

He was off of work for the finger injury for four to six weeks, and when he returned, he was on light duty for about four weeks.

On September 15, 2004, Willis was injured when he was replacing an air breather on a gearbox stand. The air breather was approximately fourteen feet high, and to replace it, Willis climbed up on the gearbox without using a ladder or safety harness. Willis was aware that he was required to use "fall protection" when he was working at least six feet high, and he estimated he was about seven feet high when he was standing on a railing of the gearbox. With one hand holding on to the gearbox frame and his other hand holding a pipe wrench, Willis hammered a second pipe wrench that broke free and struck him on the nose, breaking and lacerating it. Willis admitted to violating Nucor's fall-protection safety rule on that occasion, and he said that he knew from previous warnings that this accident could cost him his job. Willis admitted that he was made fully aware after the January accident that any accidents or safety violations could result in his termination.

Willis's employment was terminated a few days later in a meeting with Coleman, Farris, and Darsey. Farris told Willis that he was being terminated because of his frequency of accidents. Nucor's record for that event states in part:

> Roger should have taken the time to put on his fall protection harness and locate a ladder to climb on top of the gear box. Once atop the gear box[,] he then should have tied off and removed the breather using both hands to better control his tools. By working off the cross bar[,] he only had the use of one hand and the wrench was located at his face level.
>
> *Roger's employment with Nucor ended today (9/20/04) due to the repeated incidents involving the lack of awareness of potential hazards.* On January 20, 2004, Roger received a three day suspension for his failure to recognize a

hazard that resulted in the amputation of the tip of his right middle finger. *On January 20, 2004, it was clearly communicated to Roger than any further safe work violations may result in his termination*. Roger has had a total of 22 reported incidents in his 24 years of employment. Several of the incidents were severe and similar with regards to his demonstrated insufficient recognition of hazards. The leadership team has a responsibility to Roger, his family, and the Nucor family that all employees have the training, tools, equipment, facility, and environment that insures each team member a safe return home provided we do our part and work safe. It is this responsibility that requires the termination of Roger's employment. Roger has clearly demonstrated that he is a danger to himself. This action is in the best interest of Roger and his family. [Emphases added.]

*Circumstantial case of retaliatory discharge*

Because Nucor met its initial burden and established a legitimate, non-discriminatory reason for Willis's discharge, Willis was required to come forward with summary-judgment evidence of Nucor's retaliatory motive to defeat Nucor's summary-judgment motion. We therefore evaluate the summary-judgment evidence to determine whether Willis raised a genuine issue of material fact supporting his circumstantial case of retaliatory discharge.

### (1) Knowledge of the workers' compensation claim

Nucor concedes that those making the decision to terminate Willis's employment knew of the filing of his workers' compensation claim (a Nucor employee actually filed the report of injury with the carrier). However, "an employer's knowledge of a workers' compensation claim standing alone is insufficient to raise a genuine issue of material fact." *Santillan v. Wal-Mart Stores, Inc.,* 203 S.W.3d 502, 507 (Tex. App.—El Paso 2006, pet. denied) (quoting *Hernandez v. American Tel. and Tel. Co.,* 198 S.W.3d 288, 293-94 (Tex. App.—El Paso 2006, no pet.)); *see Garcia,* 28 S.W.3d at 601; *Urquidi v. Phelps*

*Dodge Refining Corp.,* 973 S.W.2d 400, 404 (Tex. App.—El Paso 1998, no pet.). This merely places the employee in the class protected by the statute. *Urquidi,* 973 S.W.2d at 404. Nor is the temporal proximity of filing a claim and an employee's discharge alone sufficient to raise a genuine issue of material fact. *Hernandez,* 198 S.W.3d at 294 (citing *Porterfield v. Galen Hosp. Corp., Inc.,* 948 S.W.2d 916, 919-20 (Tex. App.—San Antonio 1997, pet. denied)).

### (2) Negative attitude toward the employee's injured condition

Willis first attempts to establish circumstantial evidence of Nucor's retaliatory motive on this factor with his testimony that in January (or possibly in April) of 2004, he had been denied a promotion to another position because of his January injury. Willis testified that he met with Ferron Howard and Coleman, and Howard told Willis that he was not getting the new position because of his injury.

> Comments made by others not involved in the employee's termination
>
> may provide some evidence of discriminatory intent if they are: (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the termination; (3) made by individuals with authority over the employment decision; and (4) related to the employment decision at issue. *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 683 (5th Cir. 2001); *Wal-Mart Stores, Inc. v. Bertrand,* 37 S.W.3d 1, 10 (Tex. App—Tyler 2000, pet. denied). Mere stray remarks, however, are typically insufficient to show discrimination. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 25 (Tex. 2000).

*Wal-Mart Stores, Inc. v. Amos,* 79 S.W.3d 178, 187 (Tex. App.—Texarkana 2002, no pet.); *see also AutoZone, Inc. v. Reyes,* --- S.W.3d ---, ---, 2008 WL 5105163, at *3 (Tex. Dec. 5, 2008).

Howard's statement is not circumstantial evidence of Nucor's negative attitude toward Willis's September 2004 injury. It was made regarding Willis's January 2004 injury and thus was remote in time, and it was unrelated to the decision to terminate Willis's employment.

Willis next points to an anonymous 1996 memorandum that discusses the need for Nucor to improve safety and to reduce "recordables" (incidents, such as injuries resulting in workers' compensation claims, that must be recorded) as circumstantial evidence of Nucor's negative attitude.[3] This document is not circumstantial evidence of Nucor's negative attitude toward Willis's injury because it is remote in time (it was authored eight years before Willis's injury), it was not authored by anyone with authority over Willis's termination (no employee involved in the decision to terminate Willis's employment worked at the Nucor plant in Texas in 1996), and it was not related to the Willis termination decision.

The next piece of evidence that Willis asserts is evidence of Nucor's negative attitude is a news story that Willis's counsel printed from the Internet and purported to authenticate with his affidavit. Nucor objected to this document on the grounds that it is not properly authenticated and is hearsay. As discussed above, Nucor did not obtain a proper ruling from the trial court on its objections to Willis's summary-judgment evidence. Our resolution of Nucor's objections depends on the type of defect at issue in Nucor's objections. *See Peerenboom v. HSP Foods, Inc.*, 910 S.W.2d 156, 160 (Tex. App.—

---

[3] Nucor's tracking of "recordables" is required by OSHA. *See* 29 C.F.R. § 19.04.4. Such legally justified conduct cannot, by itself, be evidence of retaliation. *See Continental Coffee,* 937 S.W.2d at 451.

Waco 1995, no writ).

> Objections to the form of summary-judgment evidence are preserved for appellate review only if those objections are made and ruled on in the trial court. *See Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 241 (Tex. App—Waco 2003, no pet.); *Trusty v. Strayhorn*, 87 S.W.3d 756, 762 (Tex. App.—Texarkana 2002, no pet.). By contrast, objections to the substance of such evidence may be raised for the first time on appeal. *See Choctaw Props.*, 127 S.W.3d at 241; *Trusty*, 87 S.W.3d at 765.

*Page v. State Farm Lloyds*, 259 S.W.3d 257, 265-66 (Tex. App.—Waco 2008, pet. filed). "A defect is substantive if the summary judgment proof is incompetent; it is formal if the summary judgment proof is competent, but inadmissible." *Tri-Steel Structures, Inc. v. Baptist Found. of Tex.*, 166 S.W.3d 443, 448 (Tex. App.—Fort Worth 2005, pet. denied).

Because Nucor's objections are to the form of the Internet document, it has not preserved those objections for appellate review. *See Life Ins. Co. v. Gar-Dal, Inc.*, 570 S.W.2d 378, 380-81 (Tex. 1978); *Cottrell v. Carillon Assocs., Ltd.*, 646 S.W.2d 491, 494 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.); *see also Page,* 259 S.W.3d at 265-66. Accordingly, we will consider the document, a news story entitled "DiMicco of Nucor Calls for Level Playing Field."

The news story discusses a 2005 speech given to the steel industry by Nucor's CEO, Daniel DiMicco, in which he complained of "skyrocketing expenditures on healthcare, employee benefits and workers' compensation" that domestic steel companies bear compared to their foreign competitors. This statement is not evidence of Nucor's negative attitude toward Willis's injured condition or his workers' compensation claim. The statement was made a year after Willis's injury and thus lacks

any proximity or relationship to his injured condition and termination. Furthermore, it was made by someone not involved in Willis's termination, and it is plainly unrelated to Willis's injured condition.

We next address a series of affidavits of fellow former Nucor employees who state that they believe that Nucor has a negative attitude about worker injuries, workers' compensation claims, and recording worker injuries. Factual conclusions, opinions, and subjective beliefs unsupported by evidence are defects in substance, and an objection and trial-court ruling on those bases are not necessary to preserve the objections for appellate review. *See Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ); *see also Page*, 259 S.W.3d at 266; *Choctaw Props.*, 127 S.W.3d at 241-42.

> "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Rodriguez v. Wal-Mart Stores, Inc.*, 52 S.W.3d 814, 823 (Tex. App.—San Antonio 2001), *rev'd on other grounds*, 92 S.W.3d 502 (Tex. 2002); *Dolcefino*, 19 S.W.3d at 930; *Rizkallah*, 952 S.W.2d at 587. A "conclusory" statement may set forth an unsupported legal conclusion or an unsupported factual conclusion. *See Rizkallah*, 952 S.W.2d at 587.

*Choctaw Props.*, 127 S.W.3d at 242. We thus address Nucor's objections that the affidavits are conclusory.

*Affidavit of David Jensen.* This affidavit states:

> I was previously employed by Nucor Corporation in Jewett, Texas. It is my opinion and belief that Nucor Corporation has a negative attitude regarding injuries. This opinion and belief is based upon my years of employment at Nucor Corporation.

Nucor objects that this testimony is conclusory. We agree. Jensen's underlying fact—his years of employment at Nucor—do not support his conclusion.

*Affidavit of Rodney Ewing.*  This affidavit states:

> I was previously employed by Nucor Corporation in Jewett, Texas for approximately 24 years.  It is my opinion and belief that Nucor Corporation has a negative attitude regarding injuries and the filing of workers compensation claims.  This opinion and belief is based upon my years of employment at Nucor Corporation as well as the facts related to my filing of a workers compensation claim while employed at Nucor Corporation in Jewett, Texas.

> While working at Nucor Corporation in Jewett, Texas, I developed a work-related injury and filed a workers compensation claim.  Nucor Corporation had a negative attitude regarding my injury and workers compensation claim despite the fact that the physician to whom Nucor referred me diagnosed my condition as metal fume fever and was of the opinion that my injury was work-related.  Nucor Corporation continued to seek a denial of any benefits which I would have otherwise been entitled even though the Nucor-referred physician was of the opinion that my injury was work-related.

Nucor objects that this testimony is conclusory.  We agree.  While Ewing's affidavit states more underlying facts than Jensen's, the mere "fact" that Nucor contested Ewing's entitlement to workers' compensation benefits does not support his conclusion that "Nucor Corporation has a negative attitude regarding injuries and the filing of workers compensation claims."

*Affidavit of Grant Watson.*  This affidavit states:

> I was previously employed by Nucor Corporation in Jewett, Texas in the meltshop.

> It is my opinion based upon the facts and circumstances of my employment at Nucor Corporation that Nucor has a negative attitude regarding 'recordables' and injuries.  During April 2004, I pulled a muscle in my back.  After injuring myself, I reported the injury to my supervisor.  My supervisor asked that I not go see a physician about my back because if I did see an outside physician, Nucor would have to report my injury as a 'recordable.'

Despite Nucor's request that I not see a physician, I decided to see a physician for medical assistance. When I returned to Nucor after seeing a physician, Mike Dunn, my supervisor, told me he ought to fire me for seeing a physician and thereby adding another recordable.

It is my opinion based upon the facts above and my working history at Nucor that Nucor has a negative attitude toward injuries and 'recordables' as well as the facts related to my filing of a workers compensation claim while employed at Nucor Corporation in Jewett, Texas.

Unlike the first two affidavits, Watson's affidavit is not conclusory.[4] It provides specific underlying facts that directly support his opinion. However, it is not evidence of Nucor's negative attitude toward Willis's injured condition or workers' compensation claim. To be circumstantial evidence sufficient to establish a causal link, the expression of a negative attitude must be toward *the employee's injured condition*. *Continental Coffee*, 937 S.W.2d at 451; *cf. Johnson v. City of Houston*, 928 S.W.2d 251, 253-54 (Tex. App.—Houston [14th Dist.] 1996, no writ). Also, Willis does not show that the negative statements of Watson's supervisor, which are in the "stray remarks" category, are related to *the employment decision at issue*—the decision to terminate Willis's employment. *See Amos*, 79 S.W.3d at 187; *see also Reyes*, --- S.W.3d at ---, 2008 WL 5105163, at *3. Willis does not show that the statements were made by an individual who had authority over the Willis termination decision or who possessed leverage or exerted influence over the decision-maker. *See Reyes*, --- S.W.3d at ---, 2008 WL 5105163, at *3.

*Affidavit of Charlie McGill.* This affidavit states:

---

[4] Nucor's objection that the Watson affidavit contains hearsay goes to the form of the evidence and thus is not preserved for appellate review. *See Choctaw Props.*, 127 S.W.3d at 241.

I was previously employed by Nucor Corporation in Jewett, Texas for approximately 31 years.

While working at Nucor Corporation in Jewett, Texas, I had personal knowledge of instances in which Nucor-management pushed responsibility for accidents and incidents on employees regardless of whether the employee was at fault for the accident or incident. We were encouraged and smiled upon when a report was turned in with "employee responsibility" marked as the cause and disciplinary action taken to correct it. I was also asked to consult with the employee following accidents or incidents and to explain to the employee the reasons that the accident or incident was in fact their fault. I was also asked to get plenty of documentation of any and all accidents, incidents or other potential issues about an employee so that if Nucor later has a problem with that employee (irrespective of the employee's safety record), Nucor will have the paperwork to fire that employee already in the file. If I did not put "employee responsibility" on the accident report or investigation report forms, my supervisors and managers frowned upon me. I was criticized at Nucor for being "pro-employee" and "negative-Nucor management" because I treated people like people.

When reporting accidents and incidents, I would submit a report form which was returned by my manager with marked changes and revisions that I needed to make before the report would be accepted. Nucor would put words in my mouth in its push to focus responsibility for the incident on the employee. The push to hold the employee responsible for incidents and accidents became increasingly apparent after Jim Darsey was hired as the plant manager.

Nucor also expressed negative attitudes regarding 'recordables' during my employment. I was personally aware of several individuals who were injured while working at Nucor and which incidents would ordinarily be documented as a 'recordable' yet Nucor took steps to avoid documenting these accidents and incidents as 'recordables.' For example, a 2004 incident involving Grant Watson is illustrative of Nucor's negative attitude toward 'recordables.' After Mr. Watson was injured, Nucor did not want Mr. Watson to visit a physician because the incident would then be regarded as a 'recordable.'

It is my opinion based upon the facts above and my working history at Nucor that Nucor has a negative attitude toward injuries and 'recordables.'

Like the Watson affidavit, McGill's affidavit is not conclusory. But also like the Watson affidavit, it is not evidence of Nucor's negative attitude toward Willis's injured condition or workers' compensation claim, it does not contain evidence related to the decision to terminate Willis's employment, and it does not show that any negative statements were made by an individual who had authority over the Willis termination decision or who possessed leverage or exerted influence over the decision-maker. *See Reyes,* --- S.W.3d at ---, 2008 WL 5105163, at *3; *Amos,* 79 S.W.3d at 187.

*Affidavit of Gary Helmcamp.* This affidavit states:

> I was previously employed by Nucor Corporation in Jewett, Texas for approximately 26 years as an Electrician and as a Maintenance Shift Supervisor.
>
> While working at Nucor Corporation in Jewett, Texas, I had personal knowledge of instances in which Nucor-management pushed blame for accidents and incidents on employees regardless of whether the employee was at fault for the accident or incident. I was asked by management and/or my supervisor at Nucor to, on a regular basis, blame the employee for all accidents or incidents regardless of whether the accident or incident was the actual fault of the employee. I was also asked to consult with the employee following accidents or incidents and to explain to that employee that the accident or incident was in fact their fault. I was also asked to get plenty of documentation of any and all accidents and incidents about an employee so that if Nucor later has a problem with that employee (irrespective of the employee's safety record), Nucor will have the paperwork to fire that employee already in the file.
>
> Nucor also expressed negative attitudes regarding 'recordables' during my employment. I was personally aware of several individuals who were injured while working at Nucor and which incidents would ordinarily be documented as a 'recordable' yet Nucor took steps to avoid documenting these accidents and incidents as 'recordables.' For example, I was aware of incidents involving injured employees in which Nucor told them to come sit at the plant, even if they were not working, so that Nucor would not have to report the lost time as a 'recordable.'

It is my opinion based upon the facts above and my working history at Nucor that Nucor has a negative attitude toward injuries and 'recordables.'

This affidavit is not conclusory, but like the McGill affidavit, it is not evidence of Nucor's negative attitude toward Willis's injured condition or workers' compensation claim, it does not contain evidence related to the decision to terminate Willis's employment, and it does not show that any negative statements were made by an individual who had authority over the Willis termination decision or who possessed leverage or exerted influence over the decision-maker. *See id.*

Thus, Willis does not present any circumstantial evidence of Nucor's negative attitude toward Willis's injured condition to show Nucor's retaliatory motive.

**(3) Failure to adhere to established company policies**

Willis contends that there is circumstantial summary-judgment evidence that Nucor failed to adhere to its own policies in terminating Willis's employment. First, Willis claims that Nucor failed to comply with its policy requiring consultation with an executive vice-president before discharging an employee with more than ten years' employment. Nucor provided the affidavit of Jim Darsey, its Jewett plant General Manager, which states that he consulted with Mike Parrish, the Nucor executive vice-president who oversees the Nucor division in Jewett, about terminating Willis's employment, and that Parrish concurred with the termination decision.

Willis makes several arguments for disregarding Darsey's affidavit or finding a fact issue on this factor. He first claims that Nucor's original interrogatory answer failed to disclose Darsey's consultation with Parrish, but that answer was

supplemented.  Because that interrogatory arguably inquired about the factual bases of Nucor's defense, Nucor's original interrogatory answer is inadmissible.  *See* TEX. R. CIV. P. 197.3.  Willis also claims that Coleman's and Farris's deposition testimony create a fact issue on whether an executive vice-president was consulted, but Coleman said that he did not know if one had been consulted, and Farris was not directly asked.

Willis next contends that Nucor violated its own policy by considering Willis's infractions that occurred more than five years before his termination.   Nucor's personnel policy states:

> A minor infraction is an infraction of rules or procedures, or a display of substandard performance, which of itself is not grave enough to warrant discharge.  Repeated minor infractions, within the prior five years however, could constitute just cause for discharge where infractions show a Pattern of Neglect or disregard of work or safety rules.
> . . .
> At the one year anniversary of each infraction, that infraction will no longer be counted against the employee within this corrective action procedure.  The exception to the one-year anniversary guideline are Chronic Violators showing a pattern of neglect or disregard of work and/or safety rules.

Farris, who began his Department Manager position with Nucor in January 1999, testified that he considered only the incidents that occurred between 1999 and 2004, and that he confidently felt "that based on Roger's performance in safety and the pattern of behavior that he had demonstrated to me from '99 forward, that it was simply a matter of time before Roger himself was involved in a very serious accident or his actions would result in another team member being seriously injured or worse."  Farris said he considered only the incidents that occurred between 1999 and 2004 because those were the ones that he had personal knowledge of and he did not feel comfortable making a

decision to terminate on incidents that he did not have personal knowledge of, and "the significance of the most recent five accidents justified the termination of Roger's employment."

Willis points to Nucor's record of consultation for Willis's termination in an attempt to contradict Farris's testimony by showing that Nucor considered infractions more than five years old. That record states that Willis's employment was terminated

> due to the repeated incidents involving the lack of awareness of potential hazards. On January 20, 2004, Roger received a three day suspension for his failure to recognize a hazard that resulted in the amputation of the tip of his right middle finger. On January 20, 2004, it was clearly communicated to Roger than any further safe work violations may result in his termination. Roger has had a total of 22 reported incidents in his 24 years of employment. Several of the incidents were severe and similar with regards to his demonstrated insufficient recognition of hazards.

The April 2004 record, previously quoted, also refers to Willis's entire accident history. In addition, Farris prepared a separate document that listed all of Willis's twenty-two accidents and incidents over twenty-four years. He could not recall the exact circumstances for including all twenty-two events in preparing that document, but he "must have felt it was important to roll up Roger's entire work history."

We nevertheless agree with Nucor that its policy does not proscribe Nucor's considering Willis's work and accident history beyond the five-year period. The provision that Willis relies on does not prohibit a manager from considering an employee's accident history beyond five years. Instead, it allows managers to consider an employee's five-year history of "repeated minor infractions" when determining appropriate discipline, and it sets no limitations on what Nucor can consider when

evaluating an employee like Willis who had three major safety violations within the last five years, was encouraged but failed to attend safety-awareness training, and was given a last-chance warning.

Furthermore, the very policy that Willis relies on provides:

These steps are only guides and variations will be necessary at times to consider all individual circumstances pertaining to a situation. For example, in certain instances the severity of an infraction could well dictate that management institutes an initial step more serious than the guideline. In all cases, the circumstances of the situation should be considered and the approach tailored appropriately.

Farris testified that this flexibility is in Nucor's discipline policy to allow managers to "take each situation on its own merits" after consideration of the employee's "individual skill set" and "individual experience." We concur with Nucor that there is no evidence that Nucor violated its own discipline policy to support a circumstantial case of retaliatory motive. *Cf. Arismendiz v. Univ. Tex. El Paso*, 536 F. Supp. 2d 710, 719 (W.D. Tex. 2008).

Willis lastly argues that Nucor failed to adhere to its own policy by allegedly falsifying its fall-protection training records. Nucor held a fall-protection training meeting on January 25, 2004, and the attendee list prepared by Willis's supervisor includes Willis, who was not working because of his finger injury earlier that month. Nucor does not address how Willis's name came to be on the list, but in any event, we agree that this error, whether or not intentional, does not evidence Nucor's failure to adhere to its own policy of providing proper training. Willis had been provided fall-protection training in 1997, and he admitted that on the occasion in question (in

September 2004) he violated fall-protection safety rules.

In conclusion, Willis does not present any circumstantial evidence of Nucor's failure to adhere to its own policies to show Nucor's retaliatory motive.

**(4) Discriminatory treatment in comparison to similarly situated employees**

Willis next urges that there is circumstantial evidence of Nucor's retaliatory intent because of Nucor's disparate treatment of Willis in comparison to similarly situated employees. Willis first focuses on Coleman, who was his supervisor. Because Farris thought that Willis's safety violation in climbing on the gearbox without fall protection and also getting injured could result in Willis's termination, Farris had Coleman do a videotaped reenactment of Willis's conduct so Nucor could have a visual understanding of what Willis had done. Except for actually hammering on the pipe wrench and removing the air breather, Coleman mimicked what Willis did, including not using fall protection, which Farris attributed to a miscommunication with Coleman. Farris directed Coleman to do exactly what Willis had done, assuming that Coleman would use fall protection, but Coleman did mimic Willis by not using fall protection. Farris did not tell Coleman to use fall protection, and he took responsibility for Coleman's not doing so.

Willis argues that Nucor's failure to discipline Coleman for doing exactly what Willis had done is evidence of Nucor's disparate treatment of similarly situated employees.

> Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. To prove discrimination based on disparate discipline, the

disciplined and undisciplined employees' misconduct must be of "comparable seriousness." Although "precise equivalence in culpability between employees is not the ultimate question," *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283 n.11, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Fifth Circuit has held that to prove discrimination based on disparate discipline, the plaintiff must usually show "that the misconduct for which [he] was discharged was nearly identical to that engaged in by a [female] employee whom [the company] retained." *Smith v. Wal-Mart Stores, Inc.,* 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir. 1982)).

*Ysleta I.S.D. v. Monarrez,* 177 S.W.3d 915, 917-18 (Tex. 2005).

Nucor is correct that Willis and Coleman are not similarly situated. They did not have the same job title—Coleman was Willis's supervisor. And Coleman did not engage in "misconduct"; he was acting under the direction of Farris, his own supervisor, in conducting the simulated reenactment.

Next, Willis contends that he was treated less favorably than two other employees who were terminated for safety violations. But Nucor aptly points out that the other two were actually treated less favorably than Willis because they did not have as many safety violations as Willis, though they had performance issues, unlike Willis.

We find that there is no circumstantial evidence that Nucor engaged in disparate treatment of Willis in comparison to similarly situated employees to show retaliatory motive.

**(5) Stated reason for discharge was false**

As discussed above, after Willis's last-chance warning in April of 2004, Nucor terminated his employment in September of 2004 because of his repeated safety violations. Willis claims that this reason was pretextual and that he was actually

terminated because of his workers' compensation claim arising out of the September 2004 injury. Willis first asserts that pretext exists because some of his previous accidents and injuries were not his own fault. But even if that were the case, Nucor's stated concern about Willis's unsafe work habits arising from his three major safety violations under Farris was justifiable. Nucor's records on Willis's accident history negate, rather than support, a pretextual termination.

Willis next contends that a 2003 commendation he received from Farris for his noticeably improved safety habits evidences the pretext in Nucor's stated reason for termination. We disagree. The commendation was made because Nucor viewed Willis as having had a poor safety record but then making a "turnaround" in his view on workplace safety. This was discussed in the April 2004 record of the January 2004 accident and injury:

> All injuries are disappointing but this one is especially disappointing. On September 16, 2003, Roger was issued a letter of commendation for his performance in safety. The letter was issued to demonstrate our confidence in what appeared to be [a] turn-around in Roger's regard for an accident free work place. As a leader, few things are more gratifying and exciting than to see a person drop old habits and perspectives and actively promote ones that are aligned with the division goals. Prior to this accident it appeared as though Roger was on board with the division goal of no accidents and challenging his peers to do the same. However, it appears that Roger struggles to recognize the risk associated with performing a task.

Thus, after the September 2003 commendation, Willis was injured in January 2004, suspended for three days, and given a last-chance warning. Upon his safety violation and injury in September 2004, his employment was terminated, as he was

warned it might be. We see no evidence of pretext in this series of events, including the commendation; if anything, this evidence negates pretext.

Willis lastly argues that Nucor's reason for his termination was false because he did not actually commit a safety violation on the occasion when he was on the gearbox and the pipe wrench broke his nose. Willis claims that the summary-judgment evidence does not establish that he was actually working higher than six feet and thus violated policy by not using fall protection. But Willis admitted in his deposition that he was over six feet high, that he should have been using fall protection, and that he violated the safety rule in that regard. Additionally, Coleman stated in an affidavit that he measured the location where Willis was, and it was above six feet.

We conclude that there is no circumstantial evidence of pretext to show Nucor's retaliatory motive.

### Conclusion

In conclusion, there is no genuine issue of material fact on causal connection because Willis did not produce controverting circumstantial evidence of Nucor's retaliatory motive. We overrule Willis's fourth issue. The trial court's summary judgment is affirmed.

BILL VANCE
Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna

(Chief Justice Gray concurs in the judgment of the Court to the extent if affirms the trial court's judgment. A separate opinion will not issue. He notes, however, that he generally disagrees with the discussion of how to properly determine whether a trial court ruled on an objection made in connection with summary judgment evidence. Further, while not relied upon by the Court to affirm the judgment, Chief Justice Gray relies heavily on the fact that if the circumstantial evidence gives rise to competing inferences, then neither inference is supported by that circumstantial evidence.)

Affirmed

Opinion delivered and filed December 31, 2008

[CV06]