

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-09-00223-CV

**FRANK WOLFE, JR.
AND LLANO ROYALTY, LTD,**

                                        **Appellants**

 **v.**

**DEVON ENERGY PRODUCTION
COMPANY, LP, BARBARA JEAN GIESER POYNTER
2004 REVOCABLE MANAGEMENT TRUST,
GRAYSON MATTHEW GIESER
AND LAURA LEIGH GIESER,**

                                        **Appellees**

_____

**From the 413th District Court
Johnson County, Texas
Trial Court No. C200600230**

_____

# O P I N I O N

_____

This case involves a dispute over ownership of an undivided one-half mineral

interest in approximately seventy acres in Johnson County. On cross-motions for

summary judgment, the trial court ruled in favor of Devon Energy Production

Company, L.P. (Devon) and Barbara Jean Gieser Poynter, individually and as trustee of

the Barbara Gieser Poynter 2004 Revocable Management Trust, Grayson Matthew Gieser, and Laura Leigh Gieser (collectively the Giesers). Frank Wolfe, Jr. (Wolfe) and Llano Royalty, Ltd. (Llano) appeal in seventeen and seven issues, respectively.

## I. BACKGROUND

F. W. Smith and his wife, Eva Mae Smith, conveyed 155.115 acres of land (the Property) to Martin Hedrick and John Little by deed dated March 1, 1978. As part of the consideration for the conveyance, Hedrick and Little executed a promissory note for $209,250, payable to the Smiths (the Original Note). The Original Note was secured by a vendor's lien retained in the deed and a deed of trust to Charles H. Newman, III, trustee (the Newman Deed of Trust). The Newman Deed of Trust expressly allowed the trustee or substitute trustee to sell the property in the event of default.

While the Original Note remained unpaid, Hedrick and Little conveyed the Property to "LEONARD R. MORFELD, TRUSTEE" by deed dated July 2, 1982. In the deed, Hedrick and Little reserved an undivided one-half interest in the minerals of the Property. "LEONARD R. MORFELD, TRUSTEE" assumed the Original Note, secured by the Newman Deed of Trust and the Vendor's Lien. Wolfe alleges that Morfeld acquired the Property on his behalf and in trust for him.

"LEONARD R. MORFELD, TRUSTEE" then executed a deed conveying the Property to ABC Utilities Services, Inc. (ABC Utilities) in 1984. Wolfe was the president and chief operating officer of ABC Utilities. In the deed, "LEONARD R. MORFELD, TRUSTEE" reserved an undivided one-half interest in the minerals of the Property. ABC Utilities assumed the Original Note, secured by the Newman Deed of Trust and

the Vendor's Lien. Wolfe again alleges that Morfeld was acting on his behalf in conducting this transaction.

ABC Utilities obtained a $500,000 loan from Texas American Bank/West Side (TAB) on June 19, 1986. The loan was secured by a deed of trust to W. Barry Smith and/or Paul Goolsby, trustees (the TAB Deed of Trust). The interpretation of this instrument's language is in dispute and will be discussed more fully below. Shortly thereafter, the Smiths sold, transferred, and conveyed the Original Note and "said lien and all liens and titles held by [them] in and to said land" to TAB.

ABC Utilities then obtained a second loan from Summit National Bank (Summit) in 1988 for $1,549,770.13. The loan was secured by a deed of trust to James L. Murray, trustee (the Summit Deed of Trust). The Summit Deed of Trust stated, "The note hereby secured is given in renewal and extension of the present existing indebtednesses described as follows: SEE EXHIBIT 'B' ATTACHED HERETO AND MADE A PART HEREOF." The attached Exhibit "B" provided:

> The Note hereby secured is given in renewal and extension of that present existing indebtedness described as follows:
>
> . . . .
>
> The balance remaining due and unpaid on the hereinabove described property described in that one certain promissory note dated June 19, 1986, in the original principal sum of $500,000.00, executed by ABC UTILITIES SERVICE, INC., payable to the order of TEXAS AMERICAN BANK/WEST SIDE, described in and secured by Deed of Trust, Security Agreement and Financing Statement of even date therewith to W. Barry Smith, et al., Trustee's, recorded in Volume 1203, Page 589, Real Records, Johnson County, Texas. Said lien assigned to SUMMIT NATIONAL BANK/FORT WORTH in Assignment of Lien dated October 8, 1986,

recorded in Volume 1349, Page 244, Real Records, Johnson County, Texas; and

. . . .

WHEREAS, said note and liens are now held by Beneficiary herein, said Beneficiary is hereby subrogated to all rights, liens and equities, interest and remedies created or preserved in said note or liens, all of which are hereby continued in full force and effect in favor of said Beneficiary whether the owners of said lien or liens executed an assignment or a release of said lien or liens.

TAB had previously sold, transferred, and conveyed the TAB note and "said lien and all liens and titles held by it in and to said land" to Summit.

ABC Utilities subsequently defaulted, and Summit foreclosed on the Property under the Summit Deed of Trust. Summit purchased the Property at the foreclosure sale and received a substitute trustee's deed dated June 4, 1991. Summit then conveyed the Property to James A. Burns and his wife, Barbara J. Burns, by deed dated August 15, 1991. Thereafter, as part of their apparent divorce, James Burns conveyed the Property to his former wife, who was then known as Barbara Jean Gieser, by two deeds both dated November 19, 1993.

Over the next few years, Barbara Gieser conveyed several parcels of the Property. First, by deed dated September 2, 1994, she conveyed part of the Property to Jeffry Bednarz and his wife, Tammie Bednarz. The deed stated, "This conveyance is SUBJECT TO all the permitted exceptions described in EXHIBIT 'B', attached hereto and made a part hereof." The attached Exhibit B, entitled "PERMITTED EXCEPTIONS," stated:

> 2.      An undivided one-half interest in and to all oil, gas and other minerals, caliche, coal and lignite, etc. and the like, in, on, and under, or that which may be produced from the above described

property together with rights of ingress and egress with purpose of exploring, drilling, mining or production of the same, contained in the Warranty Deed executed by Leonard Morfeld, Trustee to ABC Utilities, Inc., and recorded in Volume 994, Page 568, Real Records, Johnson County, Texas.

. . . .

4.     Reservation of undivided one-half interest of all oil, gas and other minerals contained in instrument dated July 2, 1982, and recorded in Volume 904, Page 602, Deed Records, Johnson County, Texas, together with all rights incident thereto, express or implied.

Later, Barbara conveyed seven acres of the Property to her son, Grayson Matthew Gieser, and his wife, Laura Leigh Gieser, by deed dated March 29, 1996. This deed, unlike the conveyance to the Bednarzes, made no mention of the prior mineral reservations. Finally, Barbara conveyed another portion of the Property to Jeffry Bednarz by deed dated July 11, 1996. By almost identical language to that in the first Bednarz deed, this deed similarly stated that the conveyance was made subject to the prior mineral reservations.

On May 31, 2001, Barbara executed an Oil, Gas and Mineral Lease in favor of Mitchell Energy Company, L.P. with regard to her remaining 62.918 acres of the Property. That same day, Grayson and Laura Gieser also executed an Oil, Gas and Mineral Lease in favor of Mitchell Energy with regard to their seven acres of the Property. Mitchell Energy Company, L.P. is now known as Devon. *See* TEX. R. APP. P. 38.1(g). Barbara (apparently now known as Barbara Gieser Poynter) then conveyed her

remaining 62.918 acres of the Property to herself, as trustee of the Barbara Gieser Poynter 2004 Revocable Management Trust, by deed dated July 19, 2004.[1]

In September 2005, an "AFFIDAVIT OF FACT" signed by Ivera L. Morfeld, Leonard Morfeld's widow, was filed in the Official Public Records of Johnson County, Texas. The affidavit stated that Leonard was acting as the trustee for Wolfe in all his activity concerning the Property. Wolfe then executed his own Oil and Gas Lease in favor of Llano with regard to the Property on December 15, 2005.[2]

Llano sued Devon and the Giesers for declaratory judgment, trespass to try title, permanent injunction, conversion, and trespass. Wolfe intervened, asserting claims for declaratory judgment and trespass to try title. Llano and Wolfe then moved for and obtained partial summary judgment on their declaratory judgment actions. After the motions for partial summary judgment were granted, Ivera Morfeld, individually and as the independent executrix of Leonard Morfeld's estate, conveyed any interest that either she or the estate owned in the Property to Wolfe by quitclaim deed dated August 19, 2008, and by a correction deed dated October 20, 2008.

Thereafter, Devon and the Giesers filed motions for reconsideration of the trial court's rulings granting Llano's and Wolfe's motions for partial summary judgment.

---

[1] This deed, like the deed from Barbara to her son and daughter-in-law, made no mention of the prior mineral reservations.

[2] In 2003, Little and his wife had also apparently executed an Oil, Gas and Mineral Lease in favor of Richman Petroleum Corporation with regard to the Property. Llano states in its brief that the lease was later assigned to BROG Exchange II, L.P. Also in 2003, Eunice Edna Hedrick, widow of Martin Hedrick, apparently executed an Oil, Gas and Mineral Lease in favor of Richman Petroleum Corporation with regard to the Property. Llano states in its brief that this lease was later assigned to Westport Oil and Gas Company. These persons and entities are not parties to this lawsuit.

Devon and the Giesers also filed traditional and no-evidence motions for summary judgment. Devon and the Giesers' grounds for traditional summary judgment were:

A. Llano and Wolfe could not establish ownership to the mineral estate in issue because they could not prove that Leonard Morfeld took the property in issue in trust on behalf of Wolfe;

B. The intervening mineral severances did not survive the Summit Deed of Trust's foreclosure because:

   1. The language of the TAB Deed of Trust, coupled with the Smith Assignment to TAB, establishes as a matter of law that the parties intended the TAB Deed of Trust to renew the Original Deed of Trust; and

   2. The proceeds of the TAB Loan were used to retire the Original Indebtedness, and TAB was therefore equitably subrogated to the Smith's rights under the Original Deed of Trust;

C. A request for a declaratory judgment is not proper to determine title to real property; and

D. Llano did not have standing because its Oil and Gas Lease had expired by its own terms.

Their grounds for no-evidence summary judgment were:

A. There was no evidence that Llano and Wolfe had standing; and

B. There was no evidence to support a trespass to try title cause of action.

Llano and Wolfe then filed cross-motions for summary judgment on their trespass-to-try-title claims, asserting that they were entitled to summary judgment as a matter of law because they could demonstrate superior title emanating from a common source to that which Devon and the Giesers claimed. Devon filed a motion to strike and exclude certain evidence relied on by Llano and Wolfe in their motions for summary judgment and in their responses to Devon's motions for summary judgment.

The trial court entered final judgment on June 12, 2009, granting Devon's and the Giesers' motions for reconsideration, setting aside and vacating the previous orders granting Llano's and Wolfe's motions for partial summary judgment, granting Devon's and the Giesers' traditional and no-evidence motions for summary judgment, and denying Llano's and Wolfe's motions for summary judgment on their trespass-to-try-title claims. The trial court later sustained the objections Devon made to Llano's and Wolfe's summary-judgment evidence in its motion to strike and exclude summary-judgment evidence. This appeal ensued.

## II. STANDARD OF REVIEW

We review a trial court's summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A no-evidence motion for summary judgment is essentially a motion for pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006); *see also Humphrey v. Pelican Isle Owners Ass'n*, 238 S.W.3d 811, 813 (Tex. App.—Waco 2007, no pet.). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Tamez*, 206 S.W.3d at 583. The nonmovant must produce "summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i); *see id.* Comment 1997 ("To defeat a motion made under paragraph (i), the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements."). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *King Ranch, Inc. v. Chapman*, 118

S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). On the other hand, the evidence amounts to no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of fact. *Id.* When determining if more than a scintilla of evidence has been produced, the evidence must be viewed in the light most favorable to the nonmovant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). The movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense. *M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 23. However, once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden shifts to the nonmovant to present evidence sufficient to raise a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). In reviewing a traditional summary judgment, we must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and

resolving any doubts against the motion. *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 756.

When both sides move for summary judgment and the trial court grants one motion and denies the other, we should review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). In doing so, we first review the order granting summary judgment, and if we determine the order was erroneous, we review the trial court's action in overruling the denied motion. *Lambrecht & Assocs., Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 20 (Tex. App.—Tyler 2003, no pet.). We should then render the judgment that the trial court should have rendered, including one that denies both motions. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Lambrecht & Assocs., Inc.*, 119 S.W.3d at 20.

### III. STANDING

We begin by addressing a portion of Wolfe's tenth issue, his twelfth through sixteenth issues, portions of Llano's fourth through sixth issues, and its seventh issue, which are all related to Wolfe's and Llano's standing.

Devon and the Giesers moved for no-evidence summary judgments on the grounds that Llano and Wolfe lacked standing because there is no evidence that they had any interest in the minerals at issue in this suit. Devon and the Giesers also moved for traditional summary judgments on the grounds that (1) Llano and Wolfe could not establish ownership to the mineral estate at issue because they could not prove that Leonard Morfeld took the property at issue in trust on behalf of Wolfe and (2) Llano

lacked standing because its oil and gas lease had expired by its own terms. Llano and Wolfe contend that the trial court erred in granting Devon's and the Giesers' motions for summary judgment on these grounds, arguing that they had an interest in the minerals at issue, and thus had standing, because (1) there is sufficient evidence of an express trust between Wolfe and Morfeld; (2) in the alternative, Wolfe was the beneficiary of a resulting trust; and (3) Morfeld's widow, individually and as independent executrix of his estate, conveyed any interest either she or the estate owned in the Property to Wolfe. Llano also contends that it had standing because its lease with Wolfe had not expired and that, even if the lease expired, its past interest in the minerals during a time when Devon was drilling on the Property provided it with standing to assert its claims in this matter.

## A. Applicable Law

Standing is a component of subject-matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993). Standing is a question of law. *Brunson v. Woolsey*, 63 S.W.3d 583, 587 (Tex. App.—Fort Worth 2001, no pet.). The standing doctrine requires that there be a real controversy between the parties that will be actually determined by the judicial declaration sought. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). In a trespass-to-try-title action, a plaintiff's claim must rest on the strength of his own title, not on a weakness in its opponent's title. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). Thus, a plaintiff who has no interest at all in the land lacks standing to assert a trespass-to-try-

title action. *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Texarkana 2010, no pet.); *Walston v. Lockhart*, 62 S.W.3d 257, 259 (Tex. App.—Waco 2001, pet. denied); *see* TEX. PROP. CODE ANN. § 22.002 (West 2000).

## B. Wolfe's Standing

Llano and Wolfe alleged in their petitions that there was a trust relationship between Leonard Morfeld and Wolfe and that Wolfe thus obtained an interest in the minerals at issue when Morfeld, acting as Wolfe's trustee, acquired the Property. The requisites of an express trust are provided by the Texas Trust Code. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 249 (Tex. 1984); *see* TEX. PROP. CODE ANN. § 111.003 (West 2007). However, the Texas Trust Code provides that the prior Texas Trust Act (repealed in 1984) governs the validity of trusts entered into while the act was in force. *Nolana Dev. Ass'n*, 682 S.W.2d at 249; *see* TEX. PROP. CODE ANN. § 111.006(2) (West 2007). Therefore, in this case, the Texas Trust Act governs the transactions of the alleged Wolfe trust occurring before 1984, including the conveyance from Hedrick and Little to Leonard Morfeld as trustee, while the transactions of the alleged Wolfe trust occurring after January 1, 1984, including the conveyance from Morfeld as trustee to ABC Utilities, are governed by the Texas Trust Code. *See* TEX. PROP. CODE ANN. § 111.006(2). In spite of this, our resolution of this issue is unaffected by the change because no substantive change was intended by the repeal of the Texas Trust Act and enactment of the Texas Trust Code. *See* TEX. PROP. CODE ANN. § 1.001 (West 2004). It was merely part of the state's continuing statutory revision program. *Id.*

The Texas Trust Act provided the following methods for establishing a valid express trust:

> A. A declaration in writing by the owner of the property that he holds it as trustee for another person, or persons, or for himself and another person or persons; or
>
> B. A written transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person or persons; or
>
> C. A transfer by will by the owner of property to another person or persons as trustee for a third person or persons; provided that a natural person as trustee may be a beneficiary of any such trust.
>
> D. An appointment by a person having a power of appointment to another person as trustee for the donee of the power or for a third person; or
>
> E. A promise by a person to another person whose rights thereunder are to be held in trust for a third person; or
>
> F. A beneficiary may be a co-trustee and the legal and equitable title to the trust estate shall not merge by reason thereof.
>
> Provided, however, that a trust in relation to or consisting of real property shall be invalid, unless created, established, or declared:
>
> 1. By a written instrument subscribed by the trustor or by his agent thereunto duly authorized by writing;
>
> 2. By any other instrument under which the trustee claims the estate affected.

Texas Trust Act, 48th Leg., R.S., ch. 148, § 7, 1943 Tex. Gen. Laws 232, 234, *as amended by* Act of Apr. 6, 1945, 49th Leg., R.S., ch. 77, § 3, 1945 Tex. Gen. Laws 109, 110, *repealed by* Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws 3475, 3729-30.

Similarly, the Texas Trust Code provides that a trust may be created by:

> (1) a property owner's declaration that the owner holds the property as trustee for another person;
>
> (2) a property owner's inter vivos transfer of the property to another person as trustee for the transferor or a third person;
>
> (3) a property owner's testamentary transfer to another person as trustee for a third person;
>
> (4) an appointment under a power of appointment to another person as trustee for the donee of the power or for a third person; or

(5) a promise to another person whose rights under the promise are to be held in trust for a third person.

TEX. PROP. CODE ANN. § 112.001 (West 2007). The Texas Trust Code further states: "A trust in either real or personal property is enforceable only if there is written evidence of the trust's terms bearing the signature of the settlor or the settlor's authorized agent." *Id.* § 112.004 (West 2007). Interests in oil and gas rights—such as working interests and royalty interests in oil and gas leases—are considered interests in real property. *Trutec Oil & Gas, Inc. v. W. Atlas Int'l, Inc.*, 194 S.W.3d 580, 583 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Devon and the Giesers presented Wolfe's deposition testimony as summary-judgment evidence. In his deposition, Wolfe testified that there is no document that creates a trust for his benefit with Leonard Morfeld as trustee, nor is there any document that sets out the terms of the trust or the trustee arrangement. Wolfe further stated that there is no written document that sets up any type of trust between Wolfe and Morfeld other than the deeds indicating Morfeld to be a trustee. The use of the word "trustee" in a deed, in and of itself, does not create a trust; it is merely a description and of no legal effect. *Nolana Dev. Ass'n*, 682 S.W.2d at 249; *McAnally v. Friends of WCC, Inc.*, 113 S.W.3d 875, 882 (Tex. App.—Dallas 2003, no pet.); *Fred Rizk Constr. Co. v. Cousins Mortgage & Equity Invs.*, 627 S.W.2d 753, 757 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

This summary-judgment evidence conclusively established that Wolfe and Morfeld did not create a valid express trust because the trust did not satisfy the statute

of frauds. *See Nolana Dev. Ass'n*, 682 S.W.2d at 249. Devon and the Giesers therefore satisfied their initial burden as to their traditional motions for summary judgment on the grounds that Llano and Wolfe could not establish ownership to the mineral estate at issue because they could not prove that Leonard Morfeld took the property at issue in trust on behalf of Wolfe. Devon and the Giesers thus shifted the burden to Wolfe and Llano to present evidence sufficient to raise a fact issue. *See Centeq Realty, Inc.*, 899 S.W.2d at 197. Furthermore, because Devon and the Giesers filed no-evidence motions for summary judgment on the grounds that Llano and Wolfe lacked standing because there is no evidence that they had any interest in the minerals at issue, Llano and Wolfe had the burden to present evidence raising an issue of material fact. *See Tamez*, 206 S.W.3d at 583.

### 1. Exception to Statute of Frauds

In his thirteenth issue, Wolfe contends that, despite the statute of frauds, Ivera Morfeld's affidavit or her deed to him constituted "the execution of a fully executed oral trust which Devon and the Giesers cannot challenge." Similarly, in his fourteenth issue, Wolfe contends that after Leonard Morfeld's death, Ivera Morfeld, who was the executrix of Morfeld's will and the sole beneficiary of his estate, admitted that Morfeld served as Wolfe's trustee in both purchasing the Property and reserving the minerals and that these facts are more than a scintilla of evidence of an express trust. We disagree.

Wolfe relies on *Muhm v. Davis*, 580 S.W.2d 98 (Tex. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), for an exception to the statute of frauds. In *Muhm*, after

acknowledging the general rule that an oral agreement establishing an express trust is invalid, the court stated that the trustee under an oral trust, although not compelled to do so, is not forbidden to perform the oral trust and may choose to perform his obligation to reconvey. *Id.* at 103; *see* RESTATEMENT (SECOND) OF TRUSTS § 43 (1959). The court explained that where the trustee voluntarily conveys to the beneficiary, the trust is executed and is as valid and enforceable as though it had been evidenced by a writing in the first place; the deed relates back to the date of the oral agreement. *Muhm*, 580 S.W.2d at 103; *see* RESTATEMENT (SECOND) OF TRUSTS § 43.

But this case is distinguishable from *Muhm*. Here, Leonard Morfeld never voluntarily conveyed his interest in the property to Wolfe; rather, Morfeld's widow, a third person, conveyed the interest in the property to Wolfe after Morfeld's death. "After the trustee of an oral trust has transferred the trust property to a third person he is no longer in a position to perform the trust." RESTATEMENT (SECOND) OF TRUSTS § 43 cmt. b. Therefore, there is no executed parol express trust like that in *Muhm*. We overrule Wolfe's thirteenth and fourteenth issues.

### 2. Resulting Trust

In Wolfe's fifteenth issue and a portion of Llano's fourth issue, Llano and Wolfe contend that if the creation of an express trust between Morfeld and Wolfe failed, Wolfe is nevertheless the beneficiary of a resulting trust. A resulting trust is implied in law when someone other than the person in whose name title is taken pays the purchase price, or when an express trust fails. *Nolana Dev. Ass'n*, 682 S.W.2d at 250. The doctrine of resulting trust is invoked to prevent unjust enrichment, and equitable title will rest

with the party furnishing the consideration or trust property when an express trust fails. *Id.*

Llano and Wolfe attempted to establish a fact issue regarding this issue with summary-judgment evidence that included, among other things, Ivera Morfeld's affidavit and two of Wolfe's affidavits. Devon made several objections to these affidavits, and the trial court expressly sustained the objections almost a month after signing the final judgment.

In its seventh issue, Llano contends that the trial court erred in sustaining Devon's objections to the summary judgment evidence. Similarly, Wolfe's twelfth issue contends that the trial court erred in excluding Ivera Morfeld's affidavit as summary-judgment evidence because it is proper summary-judgment evidence under Rule 803(24) of the rules of evidence. The substance of Wolfe's argument, however, challenges the trial court's sustaining of all of Devon's objections to the summary-judgment evidence. We will therefore liberally construe Wolfe's issue in accordance with the substance of his argument. *See Perry v. Cohen*, 272 S.W.3d 585, 587-88 (Tex. 2008) (per curiam) ("'[W]e liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants.'") (quoting *El Paso Natural Gas v. Minco Oil & Gas*, 8 S.W.3d 309, 316 (Tex. 1999)).

### a. Timing of Trial Court's Evidentiary Rulings

Citing *Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655 (Tex. App.—Waco 2002, no pet.), Wolfe argues that Devon waived its objections because it failed to obtain a ruling on them at, before, or very near the time the trial court ruled on its motion for summary

judgment. In *Allen*, the trial court had granted the defendants' summary-judgment motions. *Id.* at 659. On appeal, the plaintiff argued that one of the defendant's objections to her summary-judgment evidence had been waived because of a failure to obtain a ruling from the trial court. *Id.* at 661. A majority of the court concluded that the trial court had not made an express ruling on the objections and then turned to the question of whether the trial court had implicitly ruled on the objections by granting the summary judgment. *Id.* at 661-62. The majority ultimately concluded that the trial court's order granting the defendant's summary judgment was not also an implicit ruling sustaining her objections to the plaintiff's summary-judgment evidence. *Id.* at 663. The majority then stated that it agreed with the Fourteenth District Court of Appeals' decision in *Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), when that court stated:

> We believe the better practice is for the trial court to disclose, in writing, its rulings on all objections to summary-judgment evidence at or before the time it enters the order granting or denying summary judgment. Practitioners should facilitate this procedure by incorporating all parties' objections to summary-judgment evidence in proposed orders granting or denying summary judgment and including a "Mother Hubbard" recitation to encompass any objections not otherwise addressed in the proposed orders …. In any context, however, *it is incumbent upon the party asserting objections to obtain a written ruling at, before, or very near the time the trial court rules on the motion for summary judgment or risk waiver*. *See* Tex. R. App. P. 33.1(a).

*Allen*, 97 S.W.3d at 663 (emphasis added). The majority thus indicated in dicta that summary-judgment objections would be preserved even if the party who made the objections failed to obtain an express ruling on them until after the trial court had ruled on the summary-judgment motion. However, the majority did not elaborate on the

meaning of "very near." *But see McConnell*, 858 S.W.2d at 343 & n.7 (holding that nonmovant must present in writing any issue that would defeat movant's right to summary judgment, and indicating in dicta that to preserve error, nonmovant must obtain ruling on any exception before or at hearing on motion); *Choctaw Props., L.L.C. v. Aledo ISD*, 127 S.W.3d 235 (Tex. App—Waco 2003, no pet.).

Several of our sister courts have addressed this issue, rather than mentioning it in dicta. In *Eaton Metal Prods. v. U.S. Denro Steels, Inc.*, No. 14-09-00757-CV, 2010 WL 3795192 (Tex. App.—Houston [14th Dist.] Sept. 30, 2010, no pet.), the trial court made written rulings granting a motion to strike an amended petition and sustaining certain objections to the summary-judgment evidence, but it did so almost a month after granting the summary judgment. *Id.* at *2. Nevertheless, the court held that the objections were not waived. *Id.* at *5. The court reasoned that the objections had been filed before the summary-judgment hearing and that the trial court had noted that it had taken the objections into consideration at the summary-judgment hearing and that, in signing the written order on the objections, it was merely "memorializing what the Court thought" during the earlier hearing. *Id.*

The Dallas Court of Appeals in *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280 (Tex. App.—Dallas 2009, no pet.), also concluded that objections to summary-judgment evidence were not waived simply because the trial court had not ruled on them until after it had signed the final judgment granting or denying the summary judgment. *See id.* at 295. The court noted that it was "troubled" by the timing of the rulings and stated that "the better practice" would be for the trial court to disclose, in writing, its rulings

on all objections to the summary-judgment evidence at or before the time it signs an order granting or denying summary judgment. *Id.* However, because the order ruling on the objections was entered while the trial court retained plenary power and because the rules of civil procedure do not prescribe a period of time in which a court is required to rule on summary-judgment objections, the court could find no reason to disregard the rulings on the objections. *Id.*; *see* TEX. R. CIV. P. 166a.

On the other hand, the San Antonio Court of Appeals in *Rankin v. Union Pac. R.R. Co.*, 319 S.W.3d 58 (Tex. App.—San Antonio 2010, no pet.), refused to give effect to a ruling on a motion to strike summary-judgment evidence that appeared in an order signed after the trial court had granted the summary judgment. *Id.* at 65. But the order in *Rankin* was signed after the trial court's plenary power had expired. *Id.*

First, we agree with the Dallas court that the rules of civil procedure do not prescribe a period of time in which a court is required to rule on summary-judgment objections. *See* TEX. R. CIV. P. 166a; *Esty*, 298 S.W.3d at 295. Likewise, Rule of Appellate Procedure 33.1(a) does not prescribe a period of time in which a court is required to rule on summary-judgment objections and merely states that, to preserve a complaint for appellate review, the record must show that "the trial court . . . ruled on the request, objection, or motion, either expressly or implicitly." TEX. R. APP. P. 33.1(a). Second, Devon's objections were included in its second motion to strike and exclude Wolfe's and Llano's summary-judgment evidence, which was filed *before* the trial court signed its final judgment. The trial court's final judgment then stated that, in making its rulings, it examined "the pleadings, the motions, the responses to same, any replies and

supplemental responses filed, and the argument of counsel." And finally, the trial court in this case signed the order sustaining Devon's objections during its plenary jurisdiction. *See* TEX. R. CIV. P. 329b; *Esty*, 298 S.W.3d at 294-96. Thus, we conclude that although almost a month had elapsed between the trial court's signing of the judgment in this case and its signing of the order expressly sustaining Devon's objections to Llano's and Wolfe's summary-judgment evidence, Devon did not waive its objections to the summary-judgment evidence.

### b. Substance of Devon's Objections

Ivera Morfeld's affidavit, which was presented by Wolfe and Llano as summary-judgment evidence, reads as follows:

> BEFORE ME, the undersigned authority, personally appeared Ivera Lucille Morfeld who after being duly sworn by me, deposed and said:
>
> I am the widow of Leonard Morfeld. On July 2, 1982, my husband, Leonard Morefeld [sic], purchased the below described real property as Trustee for the benefit of Frank Wolfe, Jr., Individually. Mr. Wolfe paid for the property. On March 19, 1984, my husband, Leonard Morfeld, as Trustee for Frank Wolfe, Jr., sold the below described real property to ABC Utilities Services, Inc. for the benefit of Frank Wolfe, Jr. In the conveyance to ABC Utilities Services, Inc. my husband, Leonard Morfeld, as Trustee for Frank Wolfe, Jr., reserved one-half (1/2) of the minerals in, on and under the below described real property.
>
> My husband, Leonard Morfeld, was only acting as the Trustee for Frank Wolfe, Jr. related to all activity concerning the below described real property. Neither my husband, Leonard Morfeld, nor I have any ownership interest in the surface or mineral estates of the below described real property. I did not sign an oil, gas and mineral lease on June 6, 2003 for the below described property. Any oil, gas and mineral lease for the below described property which purports to bear my signature is in error or is a forgery.

The property with which this Affidavit is concerned is described as follows:

. . . .

Devon made the following objections to Ivera Morfeld's affidavit: First, Devon objected that Ivera Morfeld's entire affidavit was not proper summary-judgment evidence because it failed to meet the requirements of Texas Rule of Civil Procedure 166a(f). More specifically, Devon objected that (1) the affidavit was not made on personal knowledge, (2) it did not state that the facts therein were true, and (3) it failed to show affirmatively that the affiant was competent to testify on the matters stated therein. Second, Devon objected that certain statements in the affidavit were not proper summary-judgment evidence because "they are conclusions, legal conclusions, fail to meet the requirements of Rule 166a because they do not set forth facts as would be admissible in evidence, and are hearsay."

Rule 166a(f) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). In her affidavit, Ivera Morfeld does not affirmatively state that the affidavit was made on personal knowledge, nor do the statements in the affidavit clearly show that she was speaking from personal knowledge. *See Spradlin v. State*, 100 S.W.3d 372, 381 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (affidavit not proper summary-judgment evidence when affiant's personal knowledge was explained only by her marital status). Furthermore, the affidavit does not show affirmatively that

Ivera Morfeld was competent to testify to the matters stated therein. *See* TEX. R. EVID. 601(a). For these reasons, we agree with Devon that the entire affidavit was not proper summary judgment evidence because it failed to meet the requirements of Rule 166a(f).

Wolfe argues that while Ivera Morfeld's affidavit arguably lacks some of the requirements for an affidavit under Rule 166a(f), it is still admissible as a statement against interest under Rule of Evidence 803(24) and as a certified public record under Rules of Evidence 901 and 902. We disagree.

Even if we were to conclude that the statements in Ivera Morfeld's affidavit are statements against interest, that still only satisfies Rule 166a(f)'s requirement that the affidavit set forth facts as would be admissible in evidence. *See* TEX. R. CIV. P. 166a(f). As stated above, Rule 166a(f) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, *and* shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* (emphasis added). Thus, the fact that Ivera Morfeld's affidavit was not made on personal knowledge and did not show affirmatively that she was competent to testify to the matters stated therein was sufficient to render it an improper affidavit for summary judgment. For the same reason, we need not address Devon's other objections that certain statements in the affidavit were not proper summary judgment evidence because "they are conclusions, legal conclusions, fail to meet the requirements of Rule 166a because they do not set forth facts as would be admissible in evidence, and are hearsay."

Furthermore, Rules of Evidence 901 and 902 concern only authentication of evidence and do not concern the admissibility of the content of that evidence. *Wright v. Lewis*, 777 S.W.2d 520, 524 (Tex. App.—Corpus Christi 1989, writ denied). Like with the previous argument about the affidavit being a statement against interest, being a certified public record does not resolve the problem that Ivera Morfeld's affidavit does not affirmatively show that it was made on personal knowledge or that she was competent to testify to the matters stated therein. *See* TEX. R. CIV. P. 166a(f). Thus, the trial court did not abuse its discretion in excluding Ivera Morfeld's affidavit from the summary-judgment evidence. *See Harris v. Showcase Chevrolet*, 231 S.W.3d 559, 561 (Tex. App.—Dallas 2007, no pet.) ("We review the trial court's admission or exclusion of summary judgment evidence under an abuse of discretion standard."). Accordingly, we will not consider Ivera Morfeld's affidavit as to Devon. We overrule in part Wolfe's twelfth and Llano's seventh issues. We need not address the other parts of Wolfe's twelfth and Llano's seventh issues in which they claim the trial court erred in sustaining Devon's objections to Wolfe's affidavits because, as explained below, even considering Wolfe's affidavits as to Devon, they do not raise a fact issue as to whether Wolfe was a beneficiary of a resulting trust.

### c. The Evidence Raises No Fact Issue as to Devon

Without Ivera Morfeld's affidavit, Wolfe has failed to produce evidence raising a fact issue that he paid for the Property, and he has failed to produce evidence raising a fact issue that he was the beneficiary of a resulting trust. *See Nolana Dev. Ass'n*, 682 S.W.2d at 250. Wolfe seems to argue that even if there is no evidence that he paid for

the Property, he is the beneficiary of a resulting trust because an express trust between Leonard Morfeld and him failed. We disagree.

The doctrine of resulting trust is invoked to prevent unjust enrichment. *Nolana Dev. Ass'n*, 682 S.W.2d at 250. Where a transfer of property is made to the trustee upon a trust that fails, and the purchase price is paid by another, a resulting trust generally arises in favor of the person by whom the purchase price is paid. *See* RESTATEMENT (THIRD) OF TRUSTS § 9 (2003); RESTATEMENT (SECOND) OF TRUSTS § 424 (1959). If, however, an express trust fails and the trustee has paid the consideration to the transferor for the transfer as an agreed exchange, the trustee is allowed to retain the property free of any trust. *Longoria v. Lasater*, 292 S.W.3d 156, 168 (Tex. App.—San Antonio 2009, pet. denied); *see* RESTATEMENT (THIRD) OF TRUSTS § 8 cmt. f; RESTATEMENT (SECOND) OF TRUSTS § 423. If, however, the consideration is paid jointly by the trustee and a third person, and an express trust has failed, a court must order an equitable disposition of the property in light of the circumstances, including the amounts contributed by each of the parties and the other rights, relationships, and general objectives of the parties. *See* RESTATEMENT (THIRD) OF TRUSTS § 8 cmt. f; RESTATEMENT (SECOND) OF TRUSTS § 423 cmt. c. Thus, whether Wolfe paid, in whole or in part, the purchase price of the Property is critical.

The deed states that "LEONARD R. MORFELD, TRUSTEE" paid the consideration for the Property to Hedrick and Little. Neither of Wolfe's affidavits addresses who paid for the Property. In the affidavit dated January 2, 2009, Wolfe merely states that he first decided to purchase the Property to own personally but then

Leonard Morfeld ended up purchasing the Property at Wolfe's direction because Morfeld had suggested that he would be able to purchase it at a lower price due to his relationship with Hedrick and Little. Wolfe points to the inventory, appraisement, and list of claims filed in the probate filings for the estate of Leonard Morfeld, which does not list an interest in the Property. While it may be circumstantial evidence that Morfeld did not pay for the Property, it is not evidence that Wolfe did pay for the Property. In fact, Wolfe testified that he physically obtained the cashier's check to pay for the property but that he could not recall whether it was at his expense or that of ABC Utilities. If the evidence permits two inferences, equally consistent with two facts, neither fact may be inferred. *City of Keller v. Wilson*, 168 S.W.3d 802, 813-14 (Tex. 2005).

We thus conclude that, as to Devon, Wolfe has failed to produce evidence raising a fact issue as to whether he was the beneficiary of a resulting trust.

### d.   The Evidence Does Raise a Fact Issue as to the Giesers

Although not entirely clear from Devon and the Giesers' joint brief, it appears that the Giesers are attempting to join in Devon's objections to Ivera Morfeld's affidavit on appeal. Wolfe points out that even if Devon's objections were preserved, the Giesers did not file any objections to Llano's and Wolfe's summary-judgment evidence and cannot now rely on Devon's objections to preserve error. We agree. If, as here, a party did not make its own objections in the trial court and did not adopt the objections of another party, it is foreclosed from relying on the objection of another party to preserve its complaint for appellate review. *See Caso-Bercht v. Striker Indus.*, 147 S.W.3d 460, 467 (Tex. App.—Corpus Christi 2004, no pet.) ("Because the Spokane defendants did not file

any objections to the appellants' summary judgment evidence, they cannot rely on another defendant's objections."); *see also Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 871 (Tex. App.—Austin 1997) ("Read may not use another party's objection to preserve error where the record does not reflect a timely expression of her intent to adopt the objection."), *aff'd on other grounds,* 990 S.W.2d 732 (Tex. 1998); *Wolfe v. East Tex. Seed Co.,* 583 S.W.2d 481, 482 (Tex. App.—Houston [1st Dist.] 1979, writ dism'd) (objection to evidence by one defendant did not preserve error for another defendant). *Cf. Beutel v. Dallas County Flood Control Dist., No. 1*, 916 S.W.2d 685, 694 (Tex. App.—Waco 1996, writ denied) (offer of proof by one defendant did not preserve error for another defendant); *Howard v. Phillips*, 728 S.W.2d 448, 451 (Tex. App.—Fort Worth 1987, no writ) (same). But with that said, objections to the substance of summary-judgment evidence may be raised for the first time on appeal.[3] *Willis*, 282 S.W.3d at 547; *Choctaw Props.,* 127 S.W.3d at 241. Therefore, we must determine whether the objections are substantive or formal.

"A defect is substantive if the summary judgment proof is incompetent; it is formal if the summary judgment proof is competent, but inadmissible." *Tri-Steel Structures, Inc. v. Baptist Found. of Tex.,* 166 S.W.3d 443, 448 (Tex. App.—Fort Worth 2005, pet. denied). Most of the objections to Ivera Morfeld's affidavit are formal. The objection that the affidavit was not based on personal knowledge must have been made in the trial court to preserve it for review. *Grand Prairie ISD v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990), *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas

---

[3] Objections to the form of summary-judgment evidence are preserved for appellate review only if those objections are made and ruled on in the trial court. *Willis v. Nucor Corp.*, 282 S.W.3d 536, 547 (Tex. App.—Waco 2008, no pet.); *Choctaw Props.,* 127 S.W.3d at 241.

2005, no pet.); *Choctaw Props.*, 127 S.W.3d at 241; *Rizkallah v. Conner*, 952 S.W.2d 580, 585 (Tex. App.—Houston [1st Dist.] 1997, no writ). *But see Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 226 (Tex. App.—El Paso 2002, no pet.) (lack of personal knowledge was defect of substance that could be raised for first time on appeal). Likewise, the hearsay objection and the objection that the affidavit does not show affirmatively that the affiant is competent to testify to the matters stated therein are objections to the form of the summary-judgment evidence. *See Woods Exploration & Producing Co. v. Arkla Equip. Co.*, 528 S.W.2d 568, 570-71 (Tex. 1975) (lack of competence); *Harrell v. Patel*, 225 S.W.3d 1, 6 (Tex. App.—El Paso 2005, pet. denied) (hearsay); *Rizkallah*, 952 S.W.2d at 586 (lack of competence). The only objections to Ivera Morfeld's affidavit that are substantive are the objections that certain statements in the affidavit are "conclusions" and "legal conclusions." *See Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Harley-Davidson Motor Co. v. Young*, 720 S.W.2d 211, 213 (Tex. App.—Houston [14th Dist.] 1986, no writ). We thus address these substantive objections as to the statements in Ivera Morfeld's affidavit that are relevant to whether there is a genuine issue of material fact that Wolfe was the beneficiary of a resulting trust.

The most pertinent statement from Ivera Morfeld's affidavit that was objected to as being conclusory is the assertion, "Mr. Wolfe paid for the property." A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Willis*, 282 S.W.3d at 548 (quoting *Choctaw Props.*, 127 S.W.3d at 242). A conclusory statement may set forth an unsupported legal conclusion or an unsupported factual

Wolfe v. Devon Energy Prod. Co.                                                                 Page 28

conclusion. *Id*. Here, other than to state that the sentence is conclusory, neither Devon nor the Giesers have provided any further explanation for why it is so. We conclude that the statement, "Mr. Wolfe paid for the property," is neither a legal nor factual conclusion.

As to the specific statement "Mr. Wolfe paid for the property," Devon and the Giesers also complain for the first time in their brief that the assertion is not only conclusory "but also is in direct contravention to Wolfe's testimony" and therefore cannot create a fact issue. We disagree. To support this argument, Devon and the Giesers cite *Farroux v. Denny's Rests., Inc.*, 962 S.W.2d 108 (Tex. App.—Houston [1st Dist.] 1997, no pet.), which states:

> A party cannot file an affidavit to contradict his own deposition testimony without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment. If a party's own affidavit contradicts his earlier testimony, the affidavit must explain the reason for the change. Without an explanation of the change in the testimony, we assume the sole purpose of the affidavit was to avoid summary judgment. As such, it presents a "sham" fact issue.

*Id.* at 111 (footnote omitted). However, an objection that Ivera Morfeld's affidavit is a "sham affidavit" because it contradicts earlier deposition testimony is another objection complaining of a defect in form and therefore must have been made in the trial court to preserve it for review. *See Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d 879, 883 (Tex. App.—Dallas 2006, no pet.). Additionally, even if we were to consider the objection, Ivera Morfeld's affidavit could not be considered a "sham affidavit" because it was made before the deposition was taken and because the deposition it allegedly contradicts was not her own, but that of Wolfe. Moreover, the affidavit does not

contradict Wolfe's deposition testimony. In his deposition, Wolfe testified that he physically obtained the cashier's check to pay for the property but that he could not recall whether it was at his expense or that of ABC Utilities.

Thus, as to the Giesers, we will consider the statement "Mr. Wolfe paid for the property" from Ivera Morfeld's affidavit as summary-judgment evidence. Ivera Morfeld also provided the metes and bounds description of the "property" that Wolfe paid for. No objections were made to this description. The metes and bounds description in Ivera Morfeld's affidavit is substantially the same as the description included in the July 2, 1982 deed from Hedrick and Little to "LEONARD R. MORFELD, TRUSTEE." Based on this evidence, as to the Giesers, there is a genuine issue of material fact as to whether Wolfe was the beneficiary of a resulting trust. *See Nolana Dev. Ass'n*, 682 S.W.2d at 250 ("A resulting trust is implied in law when someone other than the person in whose name title is taken pays the purchase price."). Therefore, as to the Giesers, Wolfe has raised a fact issue as to his interest in the property and, thus, has standing.

We sustain in part and overrule in part Wolfe's fifteenth issue and that portion of Llano's fourth issue.

### 3. Ivera Morfeld's Conveyance to Wolfe

In portions of Wolfe's tenth and Llano's fifth issues, Llano and Wolfe finally argue that even if there was no express or resulting trust relationship between Wolfe and Morfeld, Wolfe acquired an interest in the minerals at issue, and thus had standing, when Ivera Morfeld, individually and as the independent executrix of Leonard

Morfeld's estate, conveyed all interest that either she or the estate had in the Property to Wolfe in a correction deed dated October 20, 2008. We agree.

A plaintiff in a trespass-to-try-title suit may rely on a title acquired after the institution of suit if he asserts such title by an amended pleading. *Ballard v. Carmichael*, 18 S.W. 734, 735 (1892); *Cullins v. Foster*, 171 S.W.3d 521, 532 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Young v. Harbin Citrus Groves*, 130 S.W.2d 896, 898 (Tex. Civ. App.—San Antonio 1939, writ ref'd). Here, as admitted in his reply brief, Wolfe did not amend his pleadings to assert his after-acquired title. Instead, Wolfe raised the issue of after-acquired title for the first time when he filed his cross-motion for summary judgment on his trespass-to-try-title claim and again in his response to Devon's and the Giesers' motions for summary judgment. When Wolfe asserted his after-acquired title for the first time in his cross-motion for summary judgment and in his summary judgment response, Devon and the Giesers had two choices: they could object that his after-acquired title had not been pleaded, or they could respond on the merits and try the issue by consent. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006). By choosing the latter course, the issue of Wolfe's after-acquired title was placed squarely before the trial court. *See id.* Therefore, Wolfe has raised a fact issue as to his interest in the property and, thus, has standing. We sustain those portions of Wolfe's tenth and Llano's fifth issues.

In Wolfe's sixteenth issue, he contends that

(1) a deed reserving an undivided ½ of the minerals in Leonard Morfeld, as trustee; (2) an affidavit filed in the Deed Records asserting that Leonard Morfeld took title to the property and reserved the minerals on behalf of

Frank Wolfe; (3) a deed from Leonard Morfeld's widow conveying any interest she has in the Property to him; and (4) two warranty deeds from Barbara Gieser recognizing his ownership of an undivided ½ of the minerals

is sufficient evidence of Wolfe's ownership of one-half of the mineral estate to defeat a no-evidence motion for summary judgment regarding his standing to sue for trespass to try title. Wolfe had standing when Ivera Morfeld, individually and as the independent executrix of Leonard Morfeld's estate, conveyed all interest either she or the estate had in the Property to Wolfe in a correction deed dated October 20, 2008. We sustain Wolfe's sixteenth issue.

## C.    Llano's Standing

In a portion of Llano's sixth issue, it contends that the trial court erred in granting Devon's and the Giesers' motions for summary judgment because it obtained an interest in the minerals at issue when it leased them from Wolfe in 2005.

As stated above, Devon and the Giesers moved for traditional summary judgment on the ground that Llano lacked standing because its oil and gas lease had expired by its own terms. Devon and the Giesers relied on Wolfe's deposition testimony and the oil and gas lease itself, which was attached to Wolfe's deposition excerpts, to satisfy their burden of conclusively establishing this ground.

The oil and gas lease was entered into on December 15, 2005. It states in pertinent part:

> 2.     (a)  Subject to the other provisions herein contained, this lease shall be for a term of eighteen (18) months from the date hereof (called "primary term") and as long thereafter as oil and gas is produced

from said lands in paying quantities or this lease is maintained in force by virtue of some other provisions hereof.

(b)  If, at the expiration of the primary term, neither oil or gas is being produced on said land, but Lessee is then engaged in drilling or reworking operations thereon, or if, either before or after the expiration of the primary term, production of oil or gas on the leased premises, after once obtained, should cease from any cause and this lease is not being maintained in force and effect under some other provision hereof, this lease, as it then exists, shall remain in force so long as reworking, drilling, or completion operations on said well are prosecuted with no cessation of more than ninety (90) consecutive days, and if they result in production of oil or gas, so long thereafter as oil or gas is produced in paying quantities from said land, or payment of shut-in gas well royalties is made as hereunder provided.

(c)  The term "drilling operations", [sic] whenever used in this lease, shall mean and include operations conducted in good faith for drilling a well, reworking operations, and reconditioning, deepening, plugging back, cleaning out, repairing or testing of a well.  For all purposes of this lease, drilling operations shall be deemed to be prosecuted with reasonable diligence when prosecuted without cessation of more than ninety (90) consecutive days elapsed between the completion of operations at one well or location and the commencement of drilling operations at another well or location.  A well shall be deemed to be completed under the provisions of this lease thirty (30) days after a completion report is filed with the Texas Railroad Commission.

Exhibit "B" of the lease, entitled "Addendum to Lease" and also signed on December 15, 2005, further states as follows:

1.      As a condition of this Lease, and as part of the consideration for this Lease, Lessee shall pay Lessor a signing bonus of $1750.00 per net mineral acre.  Fifty percent (50%) of said signing bonus shall be paid in cash to Lessor within 5 days of the effective date of this lease, with the balance of the signing bonus shall be paid within six (6) months of the effective date of this lease, or upon attorney's verification of Lessor's clear title to the leased premises, whichever comes first.

. . . .

7.      Lessee has the option, but not the obligation, to extend the primary term of the Lease for one additional period of six (6) months by paying to Lessor the sum of $1000.00 per net mineral acre covered by this Lease, such payment to be paid in cash on or before the expiration of the primary term of this Lease.

Wolfe's deposition was taken on May 28, 2008. He testified that he signed only one lease with Llano on the Property. When he signed the lease, he was paid $135,000 in bonus money, and he had not received any more money since that time. At the time of Wolfe's deposition, Llano had not drilled or obtained any production from any part of the Property, and Wolfe had not received any royalty checks from Llano after signing the lease. Wolfe had not leased to anyone else or signed any renewal or extension of the lease with Llano since signing the original lease with Llano in 2005.

Based on this summary-judgment evidence, at the latest, the lease expired eighteen months from the date the lease was entered into because oil and gas were not being produced from the land in paying quantities nor was the lease renewed or extended. Thus, at the latest, the lease expired in June 2007.

Although Llano states that the contention that the lease has expired is without merit, it does not point to any evidence sufficient to raise a fact issue on the issue. Instead, Llano contends that even if the lease expired, its past interest in the minerals during a time when Devon was drilling on the Property provides it with sufficient standing to assert its claims in this matter. *See Rakowski v. Comm. to Protect Clear Creek Vill. Homeowners' Rights*, 252 S.W.3d 673, 679 n.9 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("Without past or present ownership interest in title to land, a party does not have standing to challenge the transfer of the title pertaining to said land.").

However, we have previously concluded that, as to Devon, Wolfe failed to produce any evidence raising a fact issue that there was a trust relationship between Leonard Morfeld and Wolfe and that Wolfe thus obtained an interest in the minerals at issue when Morfeld, acting as Wolfe's trustee, acquired the Property. Wolfe only produced evidence that he acquired an interest in the minerals at issue when Ivera Morfeld, individually and as the independent executrix of Leonard Morfeld's estate, conveyed all interest either she or the estate had in the Property to Wolfe in a correction deed dated October 20, 2008. But this was after the lease would have expired in June 2007; therefore, as to Devon, Llano never had an interest in the Property. Accordingly, Llano has only raised a fact issue as to whether it had an interest in the Property as to the Giesers. We thus sustain in part and overrule in part that portion of Llano's sixth issue.

## IV. SUMMIT DEED OF TRUST FORECLOSURE

We next consider Wolfe's first through ninth issues and portions of Llano's first and second issues dealing with the effect of the Summit Deed of Trust foreclosure.

Devon and the Giesers moved for traditional summary judgment on the ground that the intervening mineral severances did not survive the Summit Deed of Trust's foreclosure because (1) the language of the TAB Deed of Trust, coupled with the Smith Assignment to TAB, established as a matter of law that the parties intended the TAB Deed of Trust to renew the Newman Deed of Trust and (2) the proceeds of the TAB Loan were used to retire the Original Indebtedness, and TAB was therefore equitably subrogated to the Smith's rights under the Newman Deed of Trust. Llano and Wolfe contend that the trial court erred in granting Devon's and the Giesers' motions for

summary judgment because the foreclosure of the Summit Deed of Trust did not cut off the prior reservation of minerals by Morfeld. Llano and Wolfe also contend that the trial court erred in granting Devon's and the Giesers' motions for summary judgment because the doctrine of equitable subrogation is inapplicable.

A trustee has no power to sell the debtor's property, except such as may be found in the deed of trust; and the powers therein conferred must be strictly followed. *Slaughter v. Qualls*, 162 S.W.2d 671, 675 (Tex. 1942). The Summit Deed of Trust did not mention the Newman Deed of Trust, but the parties agree that the Summit Deed of Trust incorporated the TAB Deed of Trust. Thus, the controlling issue is whether, as a matter of law, the language contained in the TAB Deed of Trust carried forward the original indebtedness and its securing liens for the purpose of incorporating them into the TAB Deed of Trust such that, by incorporating the TAB Deed of Trust into the Summit Deed of Trust, it vested in the trustee of the Summit Deed of Trust the power to sell the property and effectively foreclose the prior mineral reservation by Morfeld. *See McGeorge v. Van Meter*, 358 S.W.2d 580, 583 (Tex. 1962). Wolfe and Llano argue that the TAB Deed of Trust did not incorporate the Newman Deed of Trust, while Devon and the Giesers argue that it did.

In construing a written contract, the primary concern is to ascertain and give effect to the parties' intentions as expressed in the document. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005). We consider the entire writing and attempt to harmonize and give effect to all the contract's provisions so that none are rendered meaningless. *Id.* at 312; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229

(Tex. 2003). Contract terms are given their plain, ordinary, and generally accepted meaning, unless the instrument shows the parties used them in a technical or different sense. *Dynegy Midstream Servs., L.P. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *Heritage Res., Inc. v. Nations Bank*, 939 S.W.2d 118, 121 (Tex. 1996).

The TAB Deed of Trust states:

The note secured hereby is in renewal and extension but not in extinguishment of that certain indebtedness described as follows: Vendor's Lien retained in Warranty Deed dated 3/1/1978 executed by F. W. Smith and wife Eva Mae Smith to Martin Hedrick and John Little securing the payment of one certain Promissory note of even date therewith in the original principal sum of $209,250.00 executed by Martin Hedrick and John Little payable to the order of F. W. Smith and wife Eva Mae Smith, secured by the Deed of Trust of even date therewith to Charles h. [sic] Newman, III, Trustee as recorded in Volume 343, Page 131, Deed of Trust Records, Johnson County, Texas.

Wolfe and Llano argue that this language unambiguously renewed and extended only the vendor's lien note. Devon and the Giesers respond that the language unambiguously incorporated, renewed, and extended the original indebtedness and the Newman Deed of Trust. We must decide whether the TAB Deed of Trust is ambiguous. *See Dynegy Midstream Servs.*, 294 S.W.3d at 168 ("A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation.").

The parties rely heavily on *Winters v. Slover*, 251 S.W.2d 726 (Tex. 1952), and *McGeorge*, 358 S.W.2d at 583, to support their respective positions. In *Winters*, the Texas Supreme Court considered the following deed of trust provision:

It is especially understood and agreed by all parties hereto that this deed of Trust may be declared void * * * in case the interest which matures

on the 1st of November, 1925, secured by [prior] Deed of trust . . . and by extension agreement * * * and in case the interest which matures on the 1st of October, 1925, secured by [another prior] deed of trust . . . shall not have been paid at maturity and any action taken by the beneficiary under said former deeds of trust and extension agreement shall be evidence of the fact that such payment and interest has not been made.

251 S.W.2d at 727. The court held that this provision precluded any interpretation that the former deeds of trust were incorporated into the later instrument. *Id.* at 727-28.

Referring to *Winters*, the court in *McGeorge* explained,

Obviously, if a failure to pay interest under the prior deeds of trust could result in a valid sale under the prior deeds of trust and could render the subsequent deed of trust void, it could not be said that the parties intended an "incorporation" or a "merger" of deed of trust liens.

*McGeorge*, 358 S.W.2d at 583. The *Winters* court then considered the following language in the deed of trust as well:

The hereinafter described note secured by this deed of trust is given in renewal and extension of one vendor's lien note for the sum of two thousand five hundred and 00/100 (2500) Dollars * * * fully described in a certain extension agreement * * * also one vendor's lien note for the sum of one Thousand and 00/100 Dollars (1000) * * * which said liens are continued in full force and effect at the special instance and request of the said grantors herein, and recognized by them as a first lien on the above described land.

*Winters*, 251 S.W.2d at 728. The *Winters* court held that this paragraph showed "no intention to incorporate the prior deeds of trust, but shows only an intention to extend the express vendor's liens, and perpetuate the superior legal title in the mortgagee to all surface and all mineral rights." *Id.* The court further explained, "The renewal of the express vendor's liens was merely to negative any intention on the part of the

mortgagee to waive his rights to judicial foreclosure or trespass to try title under the same." *Id.*

Subsequently, in *McGeorge*, the supreme court considered the following deed of trust provision:

> The note secured hereby is given in renewal and in extension of a note for $1,450.00 dated October 10, 1916, and due December 1, 1922, executed by Walter Stokes and wife to the Bonner Loan and Investment Company, and secured by a deed of trust recorded in Book 32, Page 133, of the trust deed records of Wise County, Texas, and the holder hereof is subrogated to all the rights, powers, and equities of the original owners and holders of said note.

*McGeorge*, 358 S.W.2d at 581. Acknowledging its decision in *Winters*, the court noted that a second deed of trust given upon property does not automatically carry forward the power to sell such property under the second deed of trust in order to pay an indebtedness secured by a first deed of trust even though the time for the payment of such indebtedness be extended by a valid agreement. *Id.* at 583. Nevertheless, the *McGeorge* court held that the above language was sufficient for the trustee's exercise of the power of sale under the second deed of trust to effectively foreclose the first deed of trust, cutting off a prior mineral reservation. *Id.* at 582-84. The court explained:

> While the second deed of trust does not contain the words "merged" and "incorporated", [sic] it did expressly provide that the note secured by the second deed of trust was given in renewal and extension of the Stokes $1450.00 note and that the holder thereof was "subrogated to all the rights, powers, and equities of the original owners and holders of said $1450.00 note." This is the usual and customary language employed in instruments which have for their object the carrying forward of an indebtedness and its securing lien for the purpose of incorporating the same into a new form of security.

*Id.* at 582.

Llano and Wolfe argue that the language of the TAB Deed of Trust is very similar to the language of the deed of trust in *Winters*, and, therefore, as in *Winters*, the TAB Deed of Trust renewed and extended only the vendor's lien note and not the Newman Deed of Trust. To support this position, Llano and Wolfe first argue that the TAB Deed of Trust does not contain any language "expressly incorporating" the Newman Deed of Trust. They contend that the TAB Deed of Trust specifically states, "The note secured hereby is in renewal and extension but not in extinguishment of that certain *indebtedness* described as follows: . . . ," and that a deed of trust lien is not an indebtedness. [Emphasis added.] *See Svacina v. Gardner*, 905 S.W.2d 780, 783 (Tex. App.—Texarkana 1995, no writ) ("A lien is neither property nor debt, but is the right to have satisfaction out of property to secure the payment of a debt."). However, the very next words used to describe "that certain indebtedness" are "Vendor's *Lien*," which casts doubt on the meaning of the term "indebtedness."

Llano and Wolfe also argue that the TAB Deed of Trust renewed and extended only the vendor's lien note and not the Newman Deed of Trust because, unlike in *McGeorge*, the TAB Deed of Trust did not include any subrogation language. On the other hand, the Newman Deed of Trust is mentioned specifically in the provision renewing and extending that certain indebtedness. Furthermore, the TAB Deed of Trust does not have the unusual provision that the *Winters* deed of trust had, stating that a failure to pay interest under the prior deeds of trust could result in a valid sale under the prior deeds of trust and could render the subsequent deed of trust void.

Because its meaning is uncertain, doubtful, and reasonably susceptible to more than one interpretation, we conclude that the TAB Deed of Trust is ambiguous. Moreover, since the TAB Deed of Trust is ambiguous, summary judgment on this ground for any of the parties is improper; the interpretation of the TAB Deed of Trust is a fact issue. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

In a portion of Llano's first issue, it contends that the trial court erred in granting Devon's and the Giesers' motions for summary judgment because the foreclosure by Summit did not cut off the prior reservation of minerals by Leonard Morfeld. It appears that Wolfe's first and fourth issues also make this complaint. Because we have concluded that there is a fact issue as to whether Summit's foreclosure cut off the prior mineral reservations, we sustain Wolfe's first and fourth issues and that portion of Llano's first issue. Accordingly, we need not reach Llano's second, Wolfe's third, and Wolfe's fifth through ninth issues.

## V. TRESPASS TO TRY TITLE ACTION

We next address the other portion of Wolfe's tenth issue, his eleventh issue, Llano's third issue, and the other portions of Llano's first and fourth through sixth issues.

Devon and the Giesers moved for no-evidence summary judgment on the ground that there was no evidence to support Llano's and Wolfe's trespass-to-try-title causes of action. Conversely, Llano and Wolfe filed their own motions for summary judgment on their trespass-to-try-title claims, each asserting as its/his sole claim that it/he has superior title to the mineral interest at issue from a common source. Llano

and Wolfe argue that the trial court erred in granting Devon's and the Giesers' motions for summary judgment and in denying their own motions for summary judgment because they have superior title to the mineral interest at issue from a common source.

A trespass-to-try-title action is a procedure by which rival claims to title or right of possession may be adjudicated. *King Ranch, Inc.*, 118 S.W.3d at 755. To recover in a trespass-to-try-title action, the plaintiff is required to prevail on the superiority of his own title, not on the weakness of the defendant's title. *Rogers*, 884 S.W.2d at 768. The plaintiff may recover (1) by proving a regular chain of conveyances from the sovereign, (2) by establishing superior title out of a common source, (3) by proving title by limitations, or (4) by proving title by prior possession coupled with proof that possession was not abandoned. *Id.* It is undisputed that the second means of establishing title is at issue here. To prove a *prima facie* case of common source, the plaintiff must connect his title and the defendant's title through complete chains of title to the common source and then show that his title is superior to the one that the defendant derived from the common source. *Id.*

We have previously held that, as to Devon, Llano has not raised a fact issue as to its interest in the Property; therefore, Llano did not prove that it has superior title to the property from a common source. However, because we have held in the previous section that the TAB Deed of Trust is ambiguous and, in the standing section, that, as to the Giesers, Llano has raised a fact issue as to its interest in the Property, we also conclude that, as to the Giesers, Llano has raised a fact issue on its trespass-to-try-title claim. Similarly, because we have held in the previous section that the TAB Deed of

Trust is ambiguous and, in the standing section, that Wolfe has raised a fact issue as to his interest in the property, we conclude that Wolfe has raised a fact issue on his trespass-to-try-title claim.

Because of the ambiguity, the trial court did not err in denying Llano's and Wolfe's motions for summary judgment. Likewise, as to Devon, Llano has not raised a fact issue as to its interest in the Property; therefore, the trial court did not err in granting Devon's no-evidence motion for summary judgment against Llano. Because of the ambiguity, the trial court did err in granting Devon's no-evidence motion for summary judgment against Wolfe. We sustain in part and overrule in part the other portion of Wolfe's tenth issue, his eleventh issue, Llano's third issue, and the other portions of Llano's first and fourth through sixth issues.

## VI.  DECLARATORY JUDGMENT CLAIMS

Finally, we address Wolfe's seventeenth issue, which challenges the granting of Devon's and the Giesers' summary-judgment motions on his declaratory judgment claim.[4] Wolfe's live pleading asserted two causes of action:  declaratory judgment and trespass to try title.

Wolfe's declaratory judgment claim reads:

> Therefore, Wolfe requests the Court to grant a declaratory judgment establishing that the leases between Defendants Barbara Jean Gieser, Grayson Matthew Gieser, and Laura Leigh Gieser to Devon Energy Production Company, L.P. are void and ineffective to authorize Devon Energy Production Company to enter upon the Property or

---

[4] Llano's brief does not challenge the trial court's granting of Devon's and the Giesers' motions for summary judgment as to its declaratory judgment claim, but Llano does adopt Wolfe's brief by reference.  *See* TEX. R. APP. P. 9.7.  We will thus address the summary judgment on Llano's declaratory-judgment claim.

produce any minerals from it. Wolfe requests the Court also to enter declaratory judgment that the Property is released from the unit known as the "Stanley Jackson Well No. 1." In addition, Wolfe requests the Court to enter a judgment against any of the defendants who have received any proceeds from the sale of any minerals wrongfully produced by Devon Energy Production Company, L.P. from the Property. Wolfe is entitled to an undivided fifty percent of any such proceeds on the basis that Devon Energy Production Company, L.P. is a trespasser with respect to any production of minerals from the Property. Additionally, Wolfe files this suit in trespass to try title in order to remove any question that he is the rightful owner of an undivided 1/2 of the minerals underlying the Property.

Except for omitting the last sentence of Wolfe's claim, Llano's declaratory judgment claim is identical to Wolfe's. Llano asserted separate causes of action for conversion and trespass, but Wolfe did not.

Devon and the Giesers moved for traditional summary judgment on Wolfe's and Llano's declaratory judgment claims on the ground that they were not a proper cause of action under the Uniform Declaratory Judgments Act because they sought to determine title to the mineral interest at issue, and a trespass-to-try-title action is the only method of determining title to real property. *See* TEX. PROP. CODE ANN. § 22.001(a) (West 2000); *Martin v. Amerman*, 133 S.W.3d 262, 265-67 (Tex. 2004), *superseded by statute*, TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c) (amending UDJA to allow party to obtain declaratory relief "when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties"); *see also Lile v. Smith,* 291 S.W.3d 75, 77-78 (Tex. App.—Texarkana 2009, no pet.) (declaratory judgment not available to determine title to land, as trespass-to-try-title action is exclusive remedy). In their respective motions, they both specifically asserted: "Llano

and Wolfe's pleadings seek a declaratory judgment regarding ownership of the minerals associated with the Property."

In his brief, Wolfe asserts:

> For unknown reasons, Devon and the Giesers ignore the fact that Frank Wolfe's live pleading contains a cause of action for trespass to try title. Devon and the Giesers apparently confused Frank Wolfe's claims for declaratory judgment and trespass to try title. In his declaratory judgment claim, which the trial court initially granted on summary judgment, Frank Wolfe sought a declaration that the foreclosure of the Summit Deed of Trust did not cut off the mineral reservation made by Leonard Morfeld. Frank Wolfe's claim for trespass to try title is completely separate and seeks to establish ownership of the ½ mineral interest as against Devon and the Giesers.

The above quotation of Wolfe's and Llano's declaratory judgment claims refutes Wolfe's position that he sought a declaration that the foreclosure of the Summit Deed of Trust did not cut off the mineral reservation made by Morfeld. The first two sentences seek declaratory relief pertaining to Devon's lease and the unit on the Property. The next two sentences seek a "judgment" (but not a "declaratory judgment") that sounds in conversion and trespass. The last sentence appears to be a mere reference to Wolfe's separately pleaded trespass-to-try-title cause of action. We note, however, that Wolfe's prayer "seeks recovery of a declaratory judgment declaring that he is the owner in a fifty percent undivided interest in and to the mineral estate underlying the Property."

Devon and the Giesers are correct that a declaratory judgment claim cannot be asserted to determine title to the mineral interest at issue, nor can such a declaratory judgment claim be asserted in an attempt to recover attorneys' fees in a trespass-to-try-title suit. *See Martin*, 133 S.W.3d at 267; *AMC Mortg. Servs., Inc. v. Watts*, 260 S.W.3d 582,

588 (Tex. App.—Dallas 2008, no pet.). Accordingly, given the declaratory relief requested in Wolfe's prayer, the trial court did not err in granting Devon's and the Giesers' summary-judgment motions on Wolfe's declaratory judgment claim to the extent that it sought declaratory relief as to the title to the Property.[5] We overrule Wolfe's seventeenth issue.

## VII. CONCLUSION

We affirm that portion of the trial court's judgment granting summary judgment in favor of Devon against Llano on all its claims. We affirm that portion of the trial court's judgment granting summary judgment in favor of Devon against Wolfe on his declaratory judgment claim to the extent that the claim sought declaratory relief as to the title to the Property. We reverse that portion of the trial court's judgment granting summary judgment in favor of Devon against Wolfe on his declaratory judgment claim to the extent that the claim did not seek declaratory relief as to the title to the Property. We reverse that portion of the trial court's judgment granting summary judgment in favor of Devon against Wolfe on his trespass-to-try-title action.

We affirm that portion of the trial court's judgment granting summary judgment in favor of the Giesers against Llano and Wolfe on their declaratory judgment claims to the extent that the claims sought declaratory relief as to the title to the Property. We reverse that portion of the trial court's judgment granting summary judgment in favor of the Giesers against Llano and Wolfe on their declaratory judgment claims to the

---

[5] Llano did not request the specific declaratory relief that Wolfe's prayer included, but to the extent that Llano has adopted Wolfe's brief, we affirm the trial court's ruling as to Llano. We express no opinion on the other declaratory relief sought by Llano and Wolfe.

extent that the claims did not seek declaratory relief as to the title to the Property. We reverse that portion of the trial court's judgment granting summary judgment in favor of the Giesers against Wolfe on Wolfe's trespass-to-try-title action and against Llano on Llano's remaining claims.

We affirm that portion of the trial court's judgment denying summary judgment for Llano and Wolfe.

We remand this cause to the trial court for further proceedings consistent with this opinion.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
        (Chief Justice Gray concurring with a separate note)
Affirmed in part; reversed and remanded in part
Opinion delivered and filed March 14, 2012
[CV06]